Affirmed by published opinion. Judge ERVIN wrote the opinion, in which Judge HAMILTON and Chief Judge HILTON joined.
OPINION
ERVIN, Circuit Judge:
The question before this Court is what administrative priority, if any, should be given to a Chapter 11 postpetition commercial lease that is subsequently breached after Chapter 7 conversion. While under Chapter 11, Merry-Go-Round Enterprises, Inc. and its affiliated corporations (“MGRE”) voluntarily entered into a new lease with the Simon DeBartolo Group, L.P. (“DeBartolo”)[1] for commercial property. When MGRE converted from Chapter 11 to Chapter 7, the newly-appointed Chapter 7 trustee Deborah Hunt Devan (the “Trustee”) breached the lease and returned the premises to De-Bartolo. DeBartolo filed a Chapter 7 administrative claim for damages which included future rent for the remainder of the lease. The bankruptcy court awarded DeBartolo a Chapter 11 administrative claim. See In re MGRE, 208 B.R. 637, 645 (Bankr.D.Md.1997). The district court affirmed.
Because we believe granting DeBartolo a Chapter 11 administrative claim best balances the competing interests of (1) encouraging parties to do business with a Chapter 11 estate against (2) preserving a Chapter 7 trustee’s discretion, we affirm the judgment of the district court.
I.
MGRE maintained approximately 1,450 retail clothing stores throughout the United States. Over 1,400 of these retail locations were leased. MGRE experienced financial difficulties and on January 11, 1994 MGRE voluntarily filed for bankruptcy under Chapter 11.
Under Chapter 11, MGRE continued to operate and reorganize in an effort to salvage its failing business. During that time, MGRE entered into ten leases with DeBartolo for retail premises. The specific property at issue in this case is retail space located at the Cutler Ridge Mall in Miami, Florida. MGRE entered into a ten-year lease with DeBartolo for the Cutler Ridge property on August 19, 1994 commencing on December 1, 1994 with a monthly rent of $5,524,50. Article XXII of the lease, entitled “Default by Lessee,” stated:
In the event of any failure of [MGRE] to pay any installment of Minimum Rent or additional rent or any other payment required to be made by [MGRE] when due hereunder, ... or if [MGRE] shall be in breach of its obligations ... De-Bartolo shall have the immediate right to reenter the Premises ... and to dispossess [MGRE] ... [MGRE] shall be liable for and shall, pay [DeBartolo] any deficiency between the Minimum Rent and all items of additional rent reserved herein and the net avails ... of relet-ting, if any, for each month of the period which otherwise would have constituted the balance of the term of this Lease.
Seven months later, MGRE filed an unopposed Motion for Entry of Order Approving Post-Petition Lease of Nonresidential Real Property Known as Cutler Ridge Merry-Go-Round which stated that MGRE had “determined, in [its] business judgment, that it is in the best interest of the estates and creditors to seek Court approval of the Lease.” The bankruptcy *153 court approved the lease on April 24, 1995 as “a post-petition lease entered into in the ordinary course of [MGRE’s] business pursuant to 11 U.S.C.A. § 363(c)(1), and for good cause.” In re MGRE, 208 B.R. at 639.
MGRE was unable to remain solvent under Chapter 11. One month before it converted to Chapter 7, MGRE submitted an Emergency Motion for Approval of Store Closing Sales at Retail Stores and the Retention of an Inventory Liquidation Agent to the bankruptcy court. MGRE requested a Chapter 11 liquidation going-out-of-business (“G.O.B..”) sale of merchandise at its retail stores including its Cutler Ridge Mall location. In this motion, MGRE stated that “(a) [MGRE is] no longer pursuing reorganization as an ongoing business, and (b) it is in the best interest of the estate to liquidate the inventory under the terms stated herein.” MGRE explicitly stated that one of the purposes of its Chapter 11 liquidation was to avoid administrative claims:
[MGRE] believes that the requested relief is in the best interest of the estate and creditors. Given the inability of [MGRE] to continue as an ongoing concern and the continued risk of depletion of the estate through ongoing administrative claims, this arrangement represents the best reasonably available prospect for [MGRE] to quickly convert inventory into cash for the benefit of creditors and to terminate administrative claims against the estate as quickly as possible.
The bankruptcy court approved the G.O.B. sale on February 22, 1996 in an order stating in relevant part:
ORDERED that the [Liquidating] Agent shall have the right to use the Stores and all furniture, fixtures and equipment in the Stores ... for the purpose of G.O.B. sales free of any interference from third parties!;]
ORDERED that, without prejudice to other claims and statutory rights of landlords, [MGRE] shall pay timely all rent and other charges due under the leases for the period commencing February 1, 1996, and continuing until such time as [MGRE] and/or the agent are no longer conducting G.O.B. sales on the premises; and it is further
ORDERED that this Order shall be binding upon any subsequent trustee appointed under either Chapter 11 or Chapter 7 of the Bankruptcy Code.
On March 1, 1996, the bankruptcy court converted MGRE to Chapter 7 and the next day appointed the Chapter 7 trustee. A number of landlords, including DeBarto-lo, jointly filed a Motion to Compel Chapter 7 Trustee’s Immediate Payment of Post-Petition Rent for Assumed and Court-Approved Post-Petition Nonresidential Real Property Leases to secure payment of their leases. In an effort to liquidate the remaining leases and begin repaying claims against MGRE, the Trustee filed a Motion Authorizing Trustee to Conduct an Auction Sale of Certain Leasehold Interests on March 25, 1996. Therein, the Trustee stated that she
had determined, in the exercise of her sound business judgment, that the assumption, assignment, and sale of the Lease may be in the best interests of the Trustee and the estates.... The Chapter 11 estate assumed almost 69 prepetition leases. Further, the Chapter 11 estate entered into 18 leases or renewals during the Chapter 11. Unless those leases are sold, the estate may be liable for substantial damages under those leases as administrative expenses.
The bankruptcy court granted both motions. The court granted the landlords’ motion in part on March 28, 1996, ordering that, pursuant to 11 U.S.C.A. § 365(d)(3), “the Trustee shall timely perform the monthly rent obligations but on an apportioned biweekly basis, for the 60 day po-stconversion period through April 30, 1996 for [MGRE]’s nonresidential, assumed and *154 postpetition leases.” In re MGRE, 208 B.R. at 640. The court also granted the Trustee’s motion, authorizing a sale by auction of the leases on March 29, 1996. It considered the landlords’ objections to the auction moot because, in part, “[t]he Trustee has previously represented to this court that she will pay the rent on those leases that had been assumed by the Debt- or or entered into postpetition.” Id.
The Trustee then negotiated a settlement with DeBartolo concerning nine of its leases. In an Order Approving Overbids (the “Overbid Order”) dated May 3, 1996, DeBartolo waived “all of its past, present and future claims” with respect to nine of the ten leases in exchange for $50,000 from the Trustee. DeBartolo conceded that it possesses no administrative claims with regard to these nine leases. Although these nine leases were “terminated” by the Overbid Order, the remaining lease—the Cutler Ridge lease—was “deemed rejected.” The next day, the Trustee returned possession of the Cutler Ridge premises to DeBartolo.
On July 8, 1996, the claims bar date, DeBartolo filed proof of a claim for (1) $16,013.62 in damages as a Chapter 11 administrative claim arising from MGRE’s past use of the Cutler Ridge premises and (2) $1,322,265.48 for future rent as a Chapter 7 administrative claim arising from the Trustee’s breach of the Cutler Ridge lease. Because the Trustee objected to this claim as a Chapter 7 administrative expense, a hearing concerning it was held on December 6,1996.
On May 16, 1997, the bankruptcy court issued a published memorandum opinion holding that DeBartolo was entitled not to a Chapter 7 administrative claim, but rather a Chapter 11 administrative claim. See In re MGRE, 208 B.R. at 645. The Trustee appealed to the district court on May 28, 1997. DeBartolo cross-appealed on June 6, 1997. On December 24, 1997, the district court affirmed the bankruptcy court’s decision in an unpublished opinion. The Trustee appealed to this Court on January 13, 1998. DeBartolo has not cross-appealed.
II.
We review the district court’s findings of fact for clear error, see Fed R. Bankr.P. 8013, and its conclusions of law de novo. See In re K & L Lakeland, Inc., 128 F.3d 203, 206 (4th Cir.1997). This Court reviews statutory interpretation of the Bankruptcy Code de novo. See Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 865 (4th Cir.1994). Since the relevant language of the Bankruptcy Code here is inconclusive, we must examine the purpose and policy behind the relevant provisions to determine whether the landlord in this case should be granted an administrative claim for future rent.[2] Because this case is an appeal of a district court’s judgment affirming a bankruptcy court’s final order, this Court has appellate jurisdiction under 28 U.S.C.A. § 158(d) (West 1999).
III.
The Trustee argued on appeal that De-Bartolo’s claim for damages was not entitled to administrative priority because it: (1) was not “actual and necessary” under 11 U.S.C.A. § 503(b) (West 1999); (2) was rejected pursuant to either (a) the Overbid Order or (b) 11 U.S.C.A. § 365 (West 1999); and (3) does not qualify as a pre-petition claim under 11 U.S.C.A. §§ 348 and 365(g) (West 1999). The Trustee also argued that even if DeBartolo’s claim is entitled to administrative priority, it is still *155 subject to the rent cap of 11 U.S.C.A. § 502(b)(6) (West 1999). We address each of these arguments below.
A.
Before we can address the Trustee’s first argument, we must determine whether future rent as a matter of law can ever be granted administrative priority. We conclude as a matter of law that future rent may be granted administrative priority.
The only authority we have been able to locate concerning the administrative priority of the future rent of a lease entered into post-petition is In re Lamparter Org., Inc., 207 B.R. 48 (E.D.N.Y.1997). The sole issue in Lamparter was “whether ... [a] claim for future rent under a long-term lease entered into with a Chapter 11 debtor in possession constituted] an administrative expense to be given priority at the time of the distribution of the bankrupt’s estate.” Id. at 49.
The facts of Lamparter are markedly similar to the instant case. In Lamparter, after the Chapter 11 debtor-in-possession negotiated a new postpetition lease, the bankruptcy court issued an order authorizing the lease. Id. Some eight months later, the estate defaulted on the lease and the bankruptcy court converted the case to Chapter 7. About one month later, the estate returned possession of the premises to the landlord. Id. at 49-50. Among its claims, the landlord asserted a Chapter 11 administrative claim for future rent. The bankruptcy court denied granting future rent administrative priority, ruling that it was a general unsecured claim. The landlord appealed and the district court reversed. After examining a Second Circuit opinion concerning the administrative priority of the future rent of a prepetition lease assumed postpetition, In re Klein Sleep Products, Inc., 78 F.3d 18 (2d Cir.1996), the district court adopted the reasoning of the Second Circuit and held that the future rent was entitled to administrative priority. Lamparter, 207 B.R. at 50-52.
Like Klein Sleep, the remaining authority concerns the future rent of a prepetition lease assumed postpetition. We believe that this authority is equally applicable to the present case because the perfection of a new postpetition lease is analogous to the postpetition assumption of a prepetition lease in that the debtor-in-possession undergoes the same deliberative process when it enters into a new lease as when it assumes an old one. When considering whether or not to enter into a new lease, the debtor-in-possession examines a draft lease and determines whether or not it would be in the best interest of the estate. If the debtor-in-possession concludes that the new lease would be in its best interest, it seeks approval from the bankruptcy court. Likewise, when considering whether or not to assume an unexpired lease, the debtor-in-possession examines the unexpired lease and determines whether or not it would be in the best interest of the estate. If the debtor-in-possession concludes that the lease would be in its best interest, it assumes the unexpired lease and seeks approval from the bankruptcy court.[3]
In further support, the old Bankruptcy Act did not distinguish between assumed prepetition and new postpetition contracts *156 for the purposes of administrative priority. The Supreme Court has given prior practice under the old Bankruptcy Act significant weight when construing new or ambiguous terms of the current Bankruptcy Code. See, e.g., Dewsnup v. Timm, 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (“When Congress amends the bankruptcy laws, it does not write on a clean slate.”) (citations omitted). The previous Bankruptcy Act unambiguously stated that “[w]hen a contract entered into or assumed in a superseded proceeding is rejected, the resulting liability shall constitute a cost of administration of the superseded proceeding.” 11 U.S.C.A. §§ 238(b), 378(b), 483(b)(1898 & Supp.1967) (repealed 1978), quoted in Chugiak, 18 B.R. at 295 n. 5. We find this prior practice persuasive.
Since we believe an assumed lease is functionally analogous to a postpetition lease, we will apply authority concerning the future rent of assumed leases to the present case.
The majority of courts that have examined this issue have concluded that future rent from an assumed lease may be granted administrative priority.[4] The Second Circuit has commented that granting administrative priority to future rent causes “two competing bankruptcy policies — promoting parity among creditors and yet granting priority to the claims of creditors who continue to do business with an insolvent debtor — [to] collide.” Klein Sleep, 78 F.3d at 20. After examining past practice under the Bankruptcy Act and these competing policy considerations, the Second Circuit held that future rent is entitled to administrative priority. Id. at 28.
At least one court has refused to grant future rent from an assumed lease administrative priority. See In re Johnston, Inc., 164 B.R. 551 (Bankr.E.D.Tex.1994). The bankruptcy court in Johnson concluded that “[ujnlike the other courts which have addressed the issue, this Court is not convinced that the loss of future rents should be preferred over general unsecured claims.” Id. at 554. The Johnson court held that future rent accruing after the lessee had vacated and returned the premises was no longer beneficial to the estate. Id. It believed that granting future rent administrative status would unjustly enrich the landlord with a windfall to the detriment of the other creditors. Id.
After examining these two lines of cases, we side with the majority of courts that have held that future rent is entitled to administrative priority. In contrast to the Johnson court’s belief that future rent should not be entitled to administrative priority when the premises have been returned to the landlord, we agree with the Second Circuit that “[s]uch a holding would mean that any post-bankruptcy contract, entered into for the benefit of a bankrupt’s estate, would cease to be entitled to priority the moment the deal turned sour.” Klein Sleep, 78 F.3d at 26.
Whether or not the future rent of a particular lease in a particular case is entitled to administrative priority is to be determined on a case-by-case basis just like any other administrative claim. See, e.g., Dobbins, 35 F.3d at 869 (commenting that administrative expenses “must be determined on a case-by-case basis”). Therefore, we now examine the particular lease at issue in this case to determine whether its future rent should be granted administrative priority.
The Trustee argued that once the Cutler Ridge premises were returned to DeBartolo, the lease failed to be either an “actual” or “necessary” expense to MGRE under § 503(b). Since the premises were vacated, MGRE no longer “actually” utilized the lease. When MGRE returned the premises to DeBartolo, the lease was no longer “necessary” to MGRE. Therefore, the Trustee asserted that since the *157 lease was neither “actual” nor “necessary,” the future rent remaining on the lease after MGRE vacated the premises cannot be an administrative expense. We disagree.
Section 503 reads in relevant part that administrative expenses include “the actual, necessary costs and expenses of preserving the estate.” § 503(b)(1)(A). Since there is a general presumption in bankruptcy cases that all of a debtor’s limited resources will be equally distributed among creditors, § 503 must be narrowly construed. See, e.g., Dobbins, 35 F.3d at 865. Therefore, DeBartolo has the burden of proving that its administrative claim for future rent is an actual and necessary expense. Id. The modifiers “actual” and “necessary” “must be observed with scrupulous care.” Id. at 866. For a claim to qualify as an actual and necessary administrative expense, “(1) the claim must arise out of a post-petition transaction between the creditor and the debtor-in-possession (or trustee) and (2) the consideration supporting the claimants right to payment must be supplied to and beneficial to the debtor-in-possession in the operation of the business.” In Re Stewart Foods, Inc., 64 F.3d 141, 145 n. 2 (4th Cir.1995) (citing Trustees of Amalgamated Ins. Fund v. McFarlin’s, Inc., 789 F.2d 98, 101 (2d Cir.1986)). We examine each element in turn.
1.
First, was the lease an actual cost of preserving the estate? The test to determine actual expense is whether the claim arose out of a post-petition transaction between DeBartolo and MGRE. See Stewart, 64 F.3d at 145 n. 2. It is undisputed that the lease arose from a post-petition transaction between DeBartolo and MGRE “entered into in the ordinary course of [MGRE’s] business ... and for good cause.” MGRE, 208 B.R. at 639. Therefore the lease was an actual cost of preserving the estate.
2.
Second, was the lease a necessary cost of preserving the estate? The test to determine necessary expense is whether DeBar-tolo’s consideration supporting its right to payment was “supplied to and beneficial to” MGRE. See Stewart, 64 F.3d at 145 n. 2.
There is no dispute that the lease was beneficial to MGRE before conversion. MGRE stated in.its motion seeking court approval of the initial lease that MGRE had “determined, in their business judgment” that the lease was “in the best interest of the estates and creditors.” Without such a lease, MGRE would not have been able to continue to operate its Cutler Ridge store under Chapter 11 or to conduct its eventual G.O.B. sale.
There is a dispute, however, over whether the lease was beneficial to MGRE after conversion. Although the language of the postpetition lease clearly states that MGRE is liable to pay future rent for the remainder of the contracted ten-year period, the Trustee argued that since MGRE is no longer using the premises, the lease cannot be considered necessary to the estate.
The Trustee’s argument is flawed because it focuses solely on the tenant. Since a lease involves both a landlord and a tenant, a comprehensive inquiry must examine both sides to determine whether the lease was a necessary expense of the estate.
a.
As far as the landlord, DeBartolo, is concerned, Chapter 7 conversion did not change the lease. Although conversion dramatically altered the character of MGRE, DeBartolo still expected MGRE to honor its lease agreement. If MGRE had been able to sell the lease to another party, DeBartolo would have continued to receive rent payments. Unfortunately, despite its best efforts, MGRE was unable to relet the premises.
*158 One of the main purposes behind granting administrative priority to certain expenses under § 503(b)(1)(A) is to provide an incentive for creditors and landlords to continue or commence doing business with a bankrupt party. See In re Colortex Indus., Inc., 19 F.3d 1371, 1384 (11th Cir.1994). If landlords like DeBartolo are not guaranteed to receive at least administrative priority on future rent, then they would have little incentive to enter into long-term leases with any tenant who has declared Chapter 11. Although this same argument could be equally applied to any other lease or executory contract, Congress demonstrated through its “Shopping Mall” amendments to the Bankruptcy Code a concern for the specific interests of shopping center landlords. See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086 (3d Cir.1990); S.Rep. No. 65, 98th Cong., 1st Sess. 33-43 (1983). What makes a shopping mall landlord’s situation unique is that she must be concerned with a number of tenants on the same premises. Even if one tenant defaults on a lease, the shopping center landlord must still provide utilities and services for the other tenants. Additionally, the interrelationship of these different tenants is often vital to a mall’s popularity. Therefore the general policy of giving landlords incentive to take risks on insolvent tenants is heightened in the case of shopping mall landlords like De-Bartolo who have more to lose than other non-residential landlords.
b.
Tenants also benefit from giving landlords an incentive to lease to insolvent parties. If landlords do not receive some assurance that their leases will be paid in full, then they will refuse to enter into leases with Chapter 11 tenants. Chapter 11 debtors-in-possession like MGRE would then find themselves in the “Catch 22” situation of needing a new lease to get out of bankruptcy but being denied a new lease because they are bankrupt. As a result, many more debtors-in-possession might be forced to declare Chapter 7.
After examining the effect of the lease on both DeBartolo and MGRE, we find that the future rent of the Cutler Ridge premises was an actual and necessary expense to preserving the estate and grant it administrative priority.
B.
Even if the lease otherwise would constitute a legitimate administrative expense, the Trustee argued that the lease is not valid because she rejected it. The Trustee claimed that either (1) MGRE and DeBar-tolo expressly agreed that the lease was rejected in the Overbid Order or (2) the plain language of § 365 caused the lease to be rejected by default. We find that neither the Overbid Order nor the statutory construction of § 365 authorized the Trustee to reject DeBartolo’s postpetition lease.
1.
The Trustee argued that the Overbid Order demonstrates that DeBartolo waived its administrative claim on the Cutler Ridge lease, ostensibly as a part of the deal negotiated with the Trustee for the payment and termination of the other nine leases. This argument suffers from three defects: (1) the language of the Order is at best ambiguous; (2) the bankruptcy judge who actually signed and issued the Order interpreted it differently; and (3) the Order can also be interpreted as a concession by the Trustee to DeBartolo by granting its Chapter 7 administrative claim.
First, the Trustee’s interpretation of the Order does not necessarily follow from its express language. The Order is entitled, “Order Approving Overbids With Respect to Lease Numbers 6697, 1839, 7126, 1310, 1028, 1016, 7835, 1231 and 1199.” Excluded from the very title of the Order is the Cutler Ridge lease, number 1241. Moreover, the paragraph ordering the deal with respect to the nine other leases is totally separate from the following paragraph which merely states that the Cutler Ridge lease was “deemed rejected.”
*159 For DeBartolo to have voluntarily waived its right to an administrative claim, there must be some clear, affirmative language relinquishing that right in the Overbid Order. See In re Varat Enter., Inc., 81 F.3d 1310, 1317 (4th Cir.1996) (“[Traditional waiver principles come into play when a party voluntarily or intentionally relinquishes a known claim right. It also applies in the bankruptcy context.”). When reviewing the Overbid Order, the district court concluded that it “says nothing more than that the lease should be ‘deemed rejected’ ” and “does not represent a new post-conversion contract.” Devan v. De-Bartolo Properties Management, Inc., No. S-97-1992, at 7 (D.Md.Dec.24, 1997) (unpublished memorandum opinion). Although the language of the Order does resemble the language of § 365(d)(4) (stating that if an unexpired nonresidential lease is not assumed or rejected by a trustee within 60 days, “such lease is deemed rejected”), there is no additional language in the Order explicitly invoking § 365. We find no clear waiver of DeBarto-lo’s right to claim administrative priority for the Cutler Ridge lease in the Overbid Order.
Second, the same bankruptcy judge who actually signed and issued the Overbid Order came to the opposite conclusion than the one asserted by the Trustee. He held that the “Trustee’s purported rejection of the Cutler Ridge Mall lease resulted in a breach of the lease.” In re MGRE, 208 B.R. at 642 (emphasis added).
Third, the Overbid Order is a double-edged sword for the Trustee because it can be interpreted as conceding to DeBartolo’s Chapter 7 administrative claim. Because the Order was signed after Chapter 7 conversion, we could conclude that the Trustee expressly agreed to reject the lease post conversion in exchange for the termination of the other leases just as easily as we could conclude that DeBartolo expressly' agreed to forfeit any administrative claim on the lease in exchange for payment of the other leases. See. e.g., In re Register, 95 B.R. 73, 74 (M.D.Tenn.1989) (“The primary purposes behind allowing debtors to reject executory contracts are (1) to relieve the estate from burdensome obligations ..., and (2) to effect a breach of contract allowing the injured party to file a claim.”), citing In re Jolly, 574 F.2d 349, 350-51 (6th Cir.1978).
After examining the Overbid Order, we find that it does not prove that DeBartolo waived its administrative claim on the Cutler Ridge lease. Therefore, we reject the Trustee’s argument that the Overbid Order has relevance to these proceedings.
2.
Even if the lease was not expressly rejected by the Overbid Order, the Trustee argued that it was rejected by operation of statute. Specifically, she asserted that pursuant to § 365(d)(4) the lease was rejected because she neither assumed nor rejected it within 60 days of conversion.[5] Both the district court and bankruptcy court agreed that § 365 applies only to leases of a “debtor” and not to those of a “debtor-in-possession.”[6] We con *160 cur with the district court that § 365 applies only to a “debtor” for three reasons.
First, this Court recently observed in dicta that § 365 governs the treatment of “executory contracts and unexpired leases-entered into by the debtor prior to the filing of the bankruptcy petition.” See Adventure Resources, Inc. v. Holland, 137 F.3d 786, 797 (4th Cir.1998) (concerning the administrative priority of claims filed by employee benefit trusts under the Coal Industry Retiree Health Benefit Act). We see no reason to contradict ourselves here.
Second, we are persuaded by the reasoning of the Sixth Circuit, Ninth Circuit, and several of the bankruptcy courts that have limited § 365 to prepetition leases. After examining the plain language and legislative history of § 365 and the policy of giving creditors a financial incentive to deal with a bankrupt estate, these courts concluded that § 365 should be limited to prepetition leases.[7]
Third, and most importantly, extending § 365 to apply to a Chapter 11 debtor-in-possession would be contrary to both common sense and general bankruptcy policy. If we were to extend § 365 to new leases entered into postpetition with a debtor-in-possession, then Chapter 7 trustees would have the discretion to reject such postpetition leases.
Allowing a Chapter 7 trustee to reject a postpetition lease could lead to the unjust enrichment of a bankruptcy estate. Although a debtor-in-possession has great incentive to enter into a new postpetition lease, namely to reorganize and become solvent again, that incentive essentially vanishes after conversion.
A Chapter 7 trustee has little incentive to assume a postpetition lease because the purpose of Chapter 7 proceedings is liquidation. See In re Glados, Inc., 83 F.3d 1360, 1365 (11th Cir.1996). Why would a Chapter 7 trustee ever assume a lease with eight years remaining when she is trying to liquidate the estate immediately and the estate already obtained as much benefit from the lease as it ever would? It is not surprising that in the current case a month before declaring Chapter 7, the estate sought to conduct a Chapter 11 G.O.B. sale “to terminate administrative claims against the estate as quickly as possible” and that, less than a month after conversion, the Trustee attempted to relet the lease because otherwise “the estate may be liable for substantial damages under those leases as administrative expenses.” Allowing a Chapter 7 trustee to reject a *161 lease entered into postpetition voluntarily would give the estate unjust license to discard the lease when it was no longer advantageous to the estate. Avoiding such unjust enrichment is one of the purposes of granting a claim administrative priority under § 503 in the first place. See, e.g., In the Matter of Strause, 40 B.R. 110, 113 (Bkrtcy.W.D.Wis.1984) (“the principal purpose of according administrative priority to claims ... is to prevent unjust enrichment of the debtor’s estate”), citing American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A., 280 F.2d 119, 126 (2d Cir.1960).
Therefore, we limit the application of § 365 to prepetition leases and hold that the Trustee could not have rejected the Cutler Ridge lease postconversion.
C.
The Trustee next argued that De-Bartolo’s claim should be treated as a pre-petition claim because it was filed before conversion. In support of this argument, the Trustee cited 11 U.S.C.A. §§ 348(d) and 365(g)(1)-(2). These sections are inap-posite here because neither statute applies to administrative expenses. Not only does the Trustee concede that claims “entitled to § 503(b) administrative status” are exempted from §§ 365(g)(1)-(2) (see Brief of the Appellant at 23), but also her argument is thwarted by the very plain language of § 348(d), which expressly excludes administrative claims under § 503(b)[8] Since the current claim in dispute is an administrative claim under § 503(b), neither § 348(d) nor § 365(g) transforms this claim into a prepetition claim.
D.
Even if the future rent is granted administrative priority, the Trustee argued in the alternative that any future rent owed is subject to the rent cap of 11 U.S.C.A. § 502(b)(6)(A).[9] Two of our sister circuits, the Second and the Sixth, are in disagreement on this point. While the Second Circuit held in Klein Sleep, 78 F.3d at 28-29, that the plain language and legislative history of § 502 implies that future rent is not capped, the Sixth Circuit in Highland concluded the opposite, holding that Congress’ implicit intent behind § 502, preventing lessors from receiving a windfall at the expense of the other creditors, implies that all administrative claims must be capped. 154 F.3d at 579.
We agree with the Second Circuit that § 502 is inapplicable to the present case for two reasons. First, because capping future rent administrative claims may provide a disincentive for landlords to lease property to debtors-in-possession, such a result would cause more debtors-in-possession to declare Chapter 7. Second, we believe that the Sixth Circuit’s concern that DeBartolo would receive a wind-fall at the expense of other creditors is satisfied by DeBartolo’s duty to mitigate its administrative claim for future rent.
The record is unclear whether De-Bartolo has been able to relet the Cutler Ridge premises. If DeBartolo has successfully relet the premises, then 'MGRE’s lease is subject to mitigation. Future rent *162 is governed by state law. See, e.g., Highland, 154 F.3d at 579 (holding that “a lessor’s damages are computed in accordance with the terms of the debtor’s lease and applicable state law .... ”), citing Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Therefore, since the contested property is located in Florida, the applicable state law here is Florida law. See, e.g., In re Vienna Park Properties, 976 F.2d 106, 112 (2d Cir.1992).
Under Florida law, DeBartolo has a duty to mitigate MGRE’s future rent with any rent collected from a subsequent tenant. See Hudson Pest Control, Inc. v. Westford Asset Management, Inc., 622 So.2d 546, 549 (Fla.Dist.Ct.App.1993) (“However, the landlord then has a duty to mitigate the tenant’s damages by making a good faith effort to release the property at a fair rental. And, the landlord must credit the tenant for any rents obtained from another tenant, during the lease term.”). See also, Highland, 154 F.3d at 577 (“[A] lessor has a duty to mitigate its damages ... if the lessor has relet the premises at a higher rent.”). If DeBartolo is collecting no rent or less rent from a subsequent tenant than it would have from MGRE, then any difference between rents remains a necessary expense. If DeBartolo is collecting more rent from a subsequent tenant than it would have from MGRE, then, of course, MGRE owes nothing.
IV.
Having concluded that DeBar-tolo is entitled to an administrative claim for damages including future rent, the remaining question is whether the claim should be categorized as a Chapter 7 or Chapter 11 administrative claim. By design, bankruptcy law involves difficult choices between competing interests. This difficulty is most apparent under Chapter 7 when there are usually more creditors seeking repayment of their debts than there are financial resources to pay them. Of course, bankruptcy law is first and foremost governed by the Bankruptcy Code. However, when the plain meaning of the Code is ambiguous or inconclusive as here, we must resort to the policy and purpose behind the Bankruptcy Code.[10]
The “purpose of a Chapter 7 case is to administer efficiently the liquidation of the estate for the benefit of the creditors.” Glados, 83 F.3d. at 1365. To accomplish this often seemingly impossible task, the Chapter 7 trustee requires considerable discretion. “This discretion is reviewable by a bankruptcy court ..., but so long as the trustee acts reasonably and in the best interests of the estate, and so long as she obtains fair value for the property under the circumstances of the case, her choice of method of disposition will be respected.” In re Frezzo, 217 B.R. 985, 989 (Bankr.E.D.Pa.1998) (citations omitted). See also In re Persky, 893 F.2d 15, 18 (2d Cir.1989) (commenting that a Chapter 7 trustee’s discretion “is not unlimited and unreviewable”).
In the present case, we want to preserve the Chapter 7 trustee’s discretion while at the same time encouraging landlords to continue to lease to Chapter 11 tenants. We believe that granting DeBartolo a Chapter 11 administrative claim correctly balances these priorities. Holding otherwise would excessively encroach upon the Trustee’s necessary discretion. Therefore, we affirm the judgment of the district court.

AFFIRMED

. Although the interest of DeBartolo has been since acquired by Ocwen Federal Bank, F.S.B., we will continue to refer to the landlord as “De-Bartolo” for clarity.

. See United States v. Ron Pair Enter., Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)('The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.”) (citations omitted); In re Moreggia & Sons, Inc., 852 F.2d 1179, 1186 (9th Cir.1988) (observing that as a court of equity the bankruptcy court may look through the form to the substance of a transaction and devise new remedies where those at law are inadequate).

. See Klein Sleep, 78 F.3d at 20 (commenting that under Chapter 11 the “same priority'' is given to expenses from assumed prepetition leases as new postpetition leases); Lamparter, 207 B.R. at 51 ("In order to advance the goal of avoiding liquidation, there is no distinction between the priority given to ... assumption of the lease by the debtor in possession ... and the priority given to ... newly executed leases with the debtor-in-possession.”); In re Chugiak Boat Works, Inc., 18 B.R. 292, 295 (Bankr.D.Alaska 1982) (“In light of the virtual identity in effect of contracts initially entered into during reorganization and contracts assumed during that time, the administrative expense provisions of the Code must'be read to authorize the Court also to treat contracts initially entered into during reorganization as administrative expenses....”).

. See Klein Sleep, 78 F.3d at 29-30; In re Baldwin Rental Centers, Inc., 228 B.R. 504, 513 (Bankr.S.D.Ga.1998) (collecting cases).

. Section 365(d)(4) reads in relevant part:
[I]f the trustee does not assume or reject an unexpired lease of nonresidential real property. under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected.
11 U.S.C.A. § 365(d)(4).
The Trustee argues that the "date of the order for relief” here was the date of conversion. See In re Lavigne, 114 F.3d 379, 386 n. 4 (2d Cir.1997) (interpreting "the date of the order for relief” as the date of conversion).

. The bankruptcy court noted:
A fatal flaw in the Trustee's statutory analysis is that by [its] terms Section 365 ... appl[ies] only to leases entered into by the debtor. The subject lease was entered into by the debtor in possession. The debtor means a person "concerning which a case under this title has been commenced.” 11 U.S.C.A. § 101(13). A debtor in possession, on the other hand, is ‘ a person that only comes into existence when a Chapter 11 *160 case is filed. While the debtor in possession is defined to mean the debtor, the definition applies only [in Chapter 11].” Id. at § 1101(1). This case is now under Chapter 7, and in Chapter 7 the subject lease is not a lease of the debtor, but rather it is a lease of the debtor-in-possession, before conversion.
In re MGRE, 208 B.R. at 641.

. See In re Cannonsburg Envtl. Assoc., Ltd., 72 F.3d 1260, 1265-66 (6th Cir.1996) (" 'Section 365 does not apply to postpetition contracts or leases negotiated by the debtor-in-possession .... [I]t would create a financial disincentive for creditors to deal with the debtor-in-possession because holders of administrative claims are paid in full, whereas holders of unsecured claims usually receive a smaller distribution.’ ”) (citation omitted); In re Dant & Russell, Inc., 853 F.2d 700, 706 (9th Cir.1988) ("Contrary to debtor-in-possession's contention, section 365(a) is inapplicable to leases executed postpetition as that section contemplates a prepetition lease or executory contract which is unexpired on the date of the petition.”); In re Leslie Fay Cos., Inc., 168 B.R. 294, 300 (Bankr.S.D.N.Y.1994) (holding that postpetition contracts are not subject to rejection under § 365.); In re Airport Executive Center, 138 B.R. 628, 629 (Bankr.M.D.Fla.1992) (same); In re I.M.L. Freight, Inc., 37 B.R. 556, 558-59 (Bankr.D.Utah 1984) (same). But see, In re Salzer, 52 F.3d 708, 713 (7th Cir.1995) (affirming the denial of an automatic stay in a postpetition lease for nonresidential real property to a bankrupt individual which was rejected by default po-stconversion); In re Ultimate Restaurant Group, Inc., 144 B.R. 291, 295 (Bankr.W.D.Pa.1992) (holding that a lease provision of a lease assumed postpetition requiring the debtor-in-possession to sell its liquor license to the lessor upon termination or default of the lease was not enforceable postconversion).

. Section 348(d) reads:
A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under § 1112 ..., other than a claim specified in § 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.
11 U.S.C.A. § 348(d) (emphasis added).

. Section 502(b)(6)(A) reads in relevant part:
Except as provided in subsections (e)(2), (f), (g), (h) and (I) of this section ... the court ... shall allow such claim in such amount, except to the extent that—if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease.
11 U.S.C.A. § 502(b)(6)(A).

. Accord Klein Sleep, 78 F.3d at 21 (commenting that determining the administrative priority of future rent "would be far easier if Congress had answered these questions explicitly in the Code, but unfortunately it left its intentions ambiguous"); In re Crouthamel Potato Chip Co., 786 F.2d 141, 146 (3d Cir.1986) ("What the entire body of [bankruptcy] rules makes available to the practitioner and the bankruptcy judge is a gestalt designed to constitute a functional whole. The rules are not a melange of independent parts.").