**In re ES2 SPORTS & LEISURE, LLC, Debtor.**

No. 14–10412.

United States Bankruptcy Court, M.D. North Carolina, Greensboro Division.

Signed Sept. 11, 2014.

Richard M. Hutson, II, Durham, NC, for Debtor.

## ORDER DENYING MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM

BENJAMIN A. KAHN, Bankruptcy Judge.

This case came before the Court for hearing on August 19, 2014, upon the Application for Administrative Expenses in the amount of $13,982.08 filed by Leasing Innovations, Incorporated ("Leasing Innovations" or "Applicant") on July 17, 2014 [Doc. # 56] (the "Application"). The Application requests allowance of an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A). Clint S. Morse appeared on behalf of Leasing Innovations, Charles M. Ivey III appeared as Chapter 7 Trustee, and Charles M. Ivey IV appeared as the attorney for the Trustee. For the reasons set forth herein, the Application is denied.

### I. Facts

On April 15, 2014, the Debtor ES2 Sports & Leisure, LLC ("Debtor") commenced this case by filing a voluntary petition under Chapter 7 of the United States Bankruptcy Code. Prepetition, the Debtor conducted its primary business through the lease of certain personal property assets and real property commonly known as "Forest Oaks Country Club" in Greensboro ("Forest Oaks" or the "Premises"). The Premises included a golf course, a club house with a golf pro shop, a pool, tennis facilities, and a former ballroom converted into a fitness center. The owner and former lessor of the Premises to the Debtor is Forest Oaks Country Club, Inc. ("Owner").

In connection with its operation of the Premises, the Debtor entered into various documents and agreements with Leasing Innovations, including Equipment Lease No. HGF100213, a Certificate of Delivery and Acceptance and Schedule A thereto, a Rider, a Cross–Corporate Lease Guaranty, a Resolution of Limited Liability Company, a Landlord's Consent and Waiver of Lien, Insurance Authorization Instructions, and an Authorization Agreement for Preauthorized Payments (ACH) (collectively, the "Equipment Lease"). Pursuant to the Equipment Lease, Leasing Innovations agreed to provide certain exercise equipment on the Premises as detailed in Schedule A (the "Equipment"). A copy of the Equipment Lease was admitted into

evidence at the hearing on this matter as Exhibit A. While styled as a "lease," the Equipment Lease provided for monthly payments in the amount of $6,554.00 and was non-cancelable during its entire forty (40) month term. According to the Rider, the Debtor had the option of purchasing the Equipment at the end of the Equipment Lease term for $1.00. According to the Certificate of Delivery and Acceptance, ES2 certified its inspection and acceptance of delivery of the Equipment on November 30, 2013. The Equipment Lease provided that Leasing Innovations "shall at all times retain title to the equipment." (Equipment Lease, ¶ 6).

On April 30, 2014, the Trustee filed a Motion for Private Sale, requesting authority to sell the personal property assets of the Debtor to the Owner for the sum of $26,000 [Doc # 15]. The Equipment specifically was excluded from the assets proposed to be sold. That same day, the Trustee filed a Motion to Request Emergency Relief from the Court to reopen some parts of Forest Oaks in order to provide service to the members of the club and maintain the integrity and value of the business [Doc. # 16] (the "Emergency Request"). The Trustee specifically asked for access to the golf course and the clubhouse, and stated that no merchandise would be sold from the golf pro shop, nor would any members be able to use the swimming pool. (Emergency Request, ¶ 8). Pursuant to the Emergency Request, the Owner and the members would have the ability to reenter the club house facility and golf course facility to operate the club for the benefit of the members. *Id.*

On May 2, 2014, the Court entered an Order granting the Emergency Request [Doc. # 21]. Six days later, on May 8, 2014, the Trustee filed a motion to abandon the Equipment [Doc. # 26] (the "Mo-tion to Abandon"). In the Motion to Abandon, the Trustee stated that the Owner, the prospective purchaser, did not desire to keep any of the Equipment. The Trustee also stated that the Equipment was unnecessary and burdensome to the estate.

A copy of a UCC–1 Financing Statement ("UCC–1"), filed with the North Carolina Secretary of State (File No. 20130107397E) on November 12, 2013, was attached to the Motion to Abandon as Exhibit 2A. The schedule attached to the filed UCC–1 covered the Equipment, and the UCC–1 named Leasing Innovations as the secured party.

On June 13, 2014, the Court granted the Trustee's Motion to Sell the Debtor's personal property assets [Doc. # 44]. Four days later, the Court granted the Motion to Abandon and ordered that the Equipment was abandoned pursuant to 554(b) effective June 17, 2014 [Doc. # 46].

On July 17, 2014, Leasing Innovations filed its Application for allowance of an administrative expense with regard to the Equipment [Doc. # 56]. In its Application, Leasing Innovations asserts a cost of administration claim pursuant to 11 U.S.C. § 503(b)(1) for the prorated portion of the monthly lease payments arising from the Petition Date through the effective date of abandonment. Leasing Innovations contends that the estate benefited from the members' ability to use the Equipment, because use of the Equipment preserved the value of the Debtor's property and facilitated the sale of the Debtor's assets to the Lessor in the amount of $26,000. Leasing Innovations asks this Court to allow it an administrative claim in the amount of $13,982.08 for use of the Equipment for the period between April 15, 2014 and June 17, 2014.

## II. Discussion

 A lessor may obtain an administrative claim under 11 U.S.C.

§ 503(b)(1)(A) when property that is owned by the lessor is used by the trustee for "the actual, necessary costs and expenses of preserving the estate...." In order to be entitled to an administrative claim, the use of the lessor's property must have conferred a benefit on the estate. *See In re Merry–Go–Round Enterprises, Inc.*, 180 F.3d 149, 157 (4th Cir.1999). The applicant bears the burden of proof, by a preponderance of the evidence, to show that it is entitled to an administrative expense award under 11 U.S.C. § 503(b). *Id.* The trustee's actual use of the leased property evidences a benefit. *See In re Alamance Knit Fabrics, Inc.*, No. 96–13527C–7G, at *28 (Bankr.M.D.N.C. Jan. 1, 1998).

Of foundational importance here is the determination of whether or not the Equipment is the subject of a true lease. If the agreement is a lease, it remained the property of Leasing Innovations as provided in the Equipment Lease. If, however, it is a disguised secured transaction, then title to the Equipment was transferred to the Debtor upon delivery of the Equipment. *See* N.C. Gen.Stat. § 25–2–401(2) ("Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods...."). If the Equipment Lease is not a true lease, Leasing Innovations is not entitled to an administrative claim pursuant to 11 U.S.C. § 503(b)(1)(A) for the use of Leasing Innovations' property because any use of the Equipment was the Debtor using its own property.[1]

Bankruptcy courts will apply federal bankruptcy law to determine what property belongs in an estate and state law to determine the nature and extent of

property rights concerning assets in the estate. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). North Carolina has adopted the Uniform Commercial Code in determining the rights of parties to leases and secured transactions. Whether an agreement is a true lease or creates a disguised security interest is governed by N.C. Gen.Stat. § 25–1–203. The issue is determined by the facts of each case. *See* N.C. Gen.Stat. § 25–1–203(a). N.C. Gen.Stat. § 25–1–203(b) further specifically provides as follows:

(b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:

(1) The original term of the lease is equal to or greater than the remaining economic life of the goods;

(2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

(3) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or

(4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

Paragraphs (a) and (b) of N.C. Gen.Stat. § 25–1–203 therefore:

---

**1.** This conclusion is not intended to prohibit the allowance of an administrative claim for adequate protection of a secured party's interest in its collateral, which is discussed below.

create[ ] a two part test for determining whether an agreement is a true lease or a disguised security interest. The first step is frequently referred to as a bright-line test: To satisfy the bright line test codified in Section 1–203(b), a court must determine that the "lease" is not subject to termination by the lessee and that at least one of the four conditions is satisfied. *In re Phoenix Equipment Co.*, No. 08–13108, 2009 WL 3188684, *3–4 (Bankr.D.Ariz. September 30, 2009). "If the lease is not terminable by the lessee and one or more of the enumerated conditions is present, then the contract is a *per se* security agreement, and the court's analysis may conclude." *Id.* If the bright line test of Section 1–203(b) is not satisfied, "then a security interest will not be conclusively found to exist and the court will need to consider other factors." *Id.; see also In re Pillowtex, Inc.*, 349 F.3d 711, 717 (3d Cir.2003).... [further citations omitted].

*In re Southeastern Materials, Inc.*, 433 B.R. 177, 181 (Bankr.M.D.N.C.2010).

In this case, the Equipment Lease was not terminable by the Debtor/lessee during the term of the lease. Moreover, the $1 purchase option at the end of the term was a nominal amount. While $1 is clearly a nominal value, the specific facts of this case further solidify this conclusion. The underlying Equipment Lease provided for forty (40) monthly payments in the amount of $6,554, totaling $262,160, for use of the Equipment. The Certificate of Delivery and Acceptance provided that the cost of the Equipment was $198,931.00. When compared to the value of the Equipment, the monthly payments, and the requested cost of administration claim for less than two months, $1 clearly is nominal value. Therefore, as contemplated by N.C. Gen. Stat. § 25–1–203(b)(4), the Equipment Lease provided that the Debtor could become the owner of the goods for nominal consideration upon compliance with the agreement. Since the Equipment Lease was non-cancelable, and the Equipment could be purchased at the end of the term for nominal value, the Equipment Lease is a *per se* disguised secured transaction. No further inquiry is needed. *Id.*

While the Equipment Lease purported to reserve title in Leasing Innovations, " '[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest.' " *See American Clipper Corp. v. Howerton*, 311 N.C. 151, 166–67, 316 S.E.2d 186, 194–195 (N.C.1984) (quoting N.C. Gen.Stat. § 25–2–401(1)). Where a trustee wishes to use property pursuant to 11 U.S.C. § 363 that is subject to a security interest, "*on request of an entity that has an interest* in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e) (emphasis added). Such adequate protection is normally measured by the depreciation of the equipment during the period that it is withheld from the secured party. *See, e.g., In re Greenbelt CT Imaging Center, LLC*, 2008 WL 2705527, *2 (Bankr.D.Md.2008). As indicated in the language of the Bankruptcy Code, the secured party must request adequate protection in order for the Court to grant the protection. *In re Sharon*, 234 B.R. 676 (6th Cir. BAP 1999). In this case, Leasing Innovations never requested adequate protection or relief from the automatic stay at any time prior to the Trustee's abandonment of the Equipment. Therefore, Leasing Innovations may not now belatedly ask for allowance of an administrative expense in the guise of lease payments.

■ Even if the Equipment Lease had been a true lease, Leasing Innovations would not be entitled to an administrative claim pursuant to 11 U.S.C. § 501(b)(1)(A) in this case.[2] There was no evidence that the Trustee actually used the Equipment after the Petition Date. The record does not show that the potential availability of the Equipment was beneficial to the Estate when negotiating with the purchaser. In fact, the record tends to show that the purchaser had no interest in the Equipment. In his filings with the Court, the Trustee contended that continued operation of the golf course was necessary to preserve the value of the estate. There is no indication that the Trustee contended that the use of all personal and real property of the estate was necessary. On the contrary, the Trustee specifically stated that access to some items of property, such as the swimming pool and golf pro shop inventory, was not necessary. The Equipment was not mentioned in the Emergency Request either way.

Furthermore, Forest Oaks was not operating post-petition until the time when the Trustee requested and the Court granted emergency relief to permit the Owner access to the Premises. Leasing Innovations did not object to the Emergency Motion, request adequate protection, or move for relief from stay. There is no indication whatsoever that the Trustee ever actually used the Equipment. Therefore, the Equipment cannot be said to have been used by the Trustee, nor could it even possibly have conferred a benefit to members prior to their access to the Premises after May 2, 2014.[3] If any use of the equipment occurred, it would have been after the second of May, after a potential buyer had been identified who was not interested in acquiring the Equipment, and only six days before the potential buyer and the Trustee declared in the Motion to Abandon that the Equipment was of no use or benefit to the Estate.

■ Finally, even if: (a) the Trustee had used or proposed to sell the Equipment; (b) Leasing Innovations had timely requested adequate protection as a condition for that use and/or proposed sale (or requested and was denied relief from stay); and (c) Leasing Innovations had provided any evidence of the amount of any depreciation of the equipment during the short post-petition period prior to abandonment, the evidence in this case belies any such depreciation because the Equipment still remained unclaimed on the Premises as of the date of the hearing in this matter, more than three (3) months after the equipment had been abandoned by the estate.

NOW, THEREFORE, for the reasons set forth herein, the Application is DENIED.

**SO ORDERED.**

---

2. Even if the Equipment Lease had been a true lease, for the period of the Petition Date through June 15, 2014, Leasing Innovations would be required to demonstrate a benefit to the estate in order to be entitled to an administrative claim. During this period, the otherwise presumptive administrative claim for the obligations arising under a commercial lease of personal property that arises under 11 U.S.C. § 365(d)(5), see In re Midway Airlines Corp., 406 F.3d 229 (4th Cir.2005) (applying 11 U.S.C. § 365(d)(10), recodified as 11 U.S.C. § 365(d)(5)), would not apply because any administrative claims otherwise allowable thereunder would not arise until at least 60 days after the order for relief. The Petition Date in this case was April 15, 2014. The Motion to Abandon was filed May 8, 2014, and the Order granting the Motion to Abandon was signed on June 16, 2014.

3. A benefit to the members would not necessarily be a benefit to the estate.