**In re A. MARCUS CO., an Illinois corporation, d/b/a Rockford Tool and Hillside Tool and Equipment Warehouse, Debtor.**

No. 86 C 2474.

United States District Court, N.D. Illinois, E.D.

July 30, 1986.

208

Gary D. Santella, Masuda, Funai, Eifert & Mitchell, Ltd., Chicago, Ill., for plaintiffs.

A. Steven B. Randall, Daniel M. Loewenstein, Horn, Randall & Assoc., Ltd., Chicago, Ill., for D.C. Plating Corp., intervenor.

Salvatore A. Barbataro, Douglas J. Lipke, Lord, Bissell & Brook, Chicago, Ill., for defendants.

WILLIAM T. HART, District Judge.

### MEMORANDUM OPINION AND ORDER

K.K.U., Ltd. ("KKU") filed this appeal to challenge the bankruptcy judge's denial of its petition to have a claim against the debtor[1] categorized as a priority administrative expense under 11 U.S.C. § 503, which provides as follows:

(b) After notice and a hearing, there shall be allowed, administrative expenses ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case[.]

As stated by the bankruptcy judge, the undisputed facts in this case are as follows:

On January 9, 1985 the parties, executed a *"Confirmation of Sale"* agreement whereby K.K.U. was to sell specific tools and parts to the Debtor F.O.B. Japan for a stated consideration. It appears that the parties had similar previous business dealings. K.K.U. is a Japanese Corporation.

On January 29, 1985 K.K.U. delivered a negotiable bill of lading to SST International, the Debtor's customs agent, in Japan. At that time K.K.U. sent an invoice to the Debtor in the sum of the contract payment due. Also at that time risk of loss was transferred to the Debtor which obtained coverage against loss.

Paragraph *4.* of the Confirmation of Sale provides "that manufacturer's inspection shall be taken as final ...".

Paragraph *5.* of the Confirmation of Sale agreement provides "that the payment shall be made regardless of claims of whatsoever nature, and the claim, if any, shall be entertained by arbitration mutually agreed upon." The agreement afforded the Debtor a term of 90 days to make payment.

On February 6, 1985 Debtor filed its petition under Chapter 11 of the Bankruptcy Code.

On February 15, 1985 the tools and parts arrived in the U.S.A. and were accepted by the Debtor.

No lien upon the tools and parts was retained by K.K.U. and payment has not been made by the Debtor. K.K.U. seeks to have its claim determined as a priority

---

1. This appeal is being defended by D.C. Plating Corp., which was granted permission to intervene because it bought all the debtor's assets. For convenience, however, this opinion will treat D.C. Plating as the debtor.

administrative expense of the Debtor's estate.

*In the Matter of Jartran,* 732 F.2d 584 (7th Cir.1984), states the policies behind § 503 as follows (*id.* at 586, some citations omitted):

> If a reorganization is to succeed, creditors asked to extend credit after the petition is filed must be given priority so they will be moved to furnish the necessary credit to enable the bankrupt to function. *See In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976) (Coffin, Chief Judge). Thus, "[w]hen third parties are *induced* to supply goods or services to the debtor-in-possession ... the purposes of [§ 503] plainly require that their claims be afforded priority." *Id.* (emphasis added; footnote omitted). Without a provision like § 503, efforts to reorganize would be hampered by the necessity of advance payment for all goods and services supplied to the estate since presumably no creditor would willingly assume the status of a non-priority creditor to a debtor undergoing reorganization.

This involves no injustice to the pre-petition creditors because it is for their benefit that reorganization is attempted. If reorganization successfully rehabilitates the debtor, presumably the pre-petition creditors will be better off than in a liquidation. However, because priority should not be afforded unless it is founded on a clear statutory purpose, if the appellant's claim does not comport with the language and underlying purposes of § 503, their claim must fail. Any preference for claims not intended by Congress to have priority would dilute the value of the intended priority and thus frustrate the intent of Congress.

To effect these policies, *Jartran* adopted the following two-part test:

> ... a claim will be afforded priority under § 503 if the debt both (1) "arise[s] from a transaction with the debtor-in-possession" and (2) is "beneficial to the debtor-in-possession in the operation of the business." *In re Mammoth Mart, Inc.,* 536 F.2d at 954.

*Id.* at 587. There is no contention in this case that the transaction is anything other than beneficial to the debtor's business, so the only question is whether KKU made the transaction with the debtor as opposed to the pre-petition company.

In *Jartran* the court concluded the transaction was not with the debtor because the transaction (placement of advertisements by the debtor in Yellow Page directories) was finalized and irrevocable before the bankruptcy petition was filed. As the court stated:

> To serve the policy of the priority, inducement of the creditor's performance *by the debtor-in-possession* is crucial to a claim for administrative priority in the context of the furnishing of goods or services to the debtor. *See In re Mammoth Mart, Inc., supra,* 536 F.2d at 954. Because the closing date occurred before the debtor-in-possession came into existence (through the filing of the Chapter 11 petition), the bankruptcy court in the case before us held that the debtor-in-possession did not induce appellants' performance.

*Id.* at 587.

In this case, the bankruptcy judge correctly held the transaction was finalized on January 29, when delivery occurred. True, payment did not have to be made for 90 days, but in the *Jartran* case the debtor was not even billed until after the petition was filed (732 F.2d at 585) and that fact did not make the transaction one with the debtor.

Appellant also relies on *In re Coast Trading Co.,* 744 F.2d 686, 693 (9th Cir. 1984), in which the court held that goods shipped before but arriving after filing of the bankruptcy petition were an administrative expense because the contract was executory, and the contract was executory because under § 2–705 of the Uniform Commercial Code the shipper had the right to stop the goods in transit.[2] Although

---

**2.** A reason the court found the contract executory was that the risk of loss during transit was

that right was not exercised in *Coast Trading,* the court held that made no difference. With all respect, this court believes that decision to be inconsistent with *Jartran*'s emphasis on the policy of § 503. Here, KKU did not try to stop the goods in transit so obviously no inducement by the debtor was necessary to ensure the goods' arrival. KKU's performance was complete when it delivered to A. Marcus Co.'s agent in Japan. Therefore, KKU's performance was induced solely by pre-petition A. Marcus, not the debtor. Since the risk of loss had shifted to the buyer it is not clear that the seller would have authority to stop the goods in transit. At that point the shipper may be regarded as the agent of the buyer.

Appellant also relies on *In re Ciavarelli,* 16 B.R. 369 (E.D.Pa.1982), which discussed the possibility that an individual's use of a credit card immediately before filing for bankruptcy could be fraud so as to make the debt non-dischargeable. As the bankruptcy judge correctly concluded, that case is irrelevant. The issue here is priority, not dischargeability.

Finally, appellant relies on the following discussion from *Jartran* :

> Appellants argue that this case is similar to a situation in which goods are shipped by a creditor prior to the debtor's filing a petition in bankruptcy but with the goods arriving after the filing. In such a case, it is argued, if the debtor-in-possession (which came into existence upon filing) accepts the goods, the creditor is entitled to administrative priority as a post-petition creditor. Without quarreling about the correctness of the example, we are not persuaded that it is analogous to the present case. In the example, the act of acceptance by the debtor-in-possession could be construed as an affirmation of the contract. There might even be an obligation on the part of the debtor to reject the goods if it did not plan to treat the delivery as a post-petition transaction. Jartran, however, performed no act after the filing of the petition that could be construed as an affirmation of

on the shipper. That is not true here, so that

the placement of the ads. Jartran could not, once the closing date had passed, withdraw the ads, and no further action on its part was necessary to cause publication. This case is more like a situation in which a creditor has supplied a machine, for example, a photocopier, before the filing of the petition in bankruptcy. Questions of secured status aside, the mere fact that the debtor continued to use the machine after the petition was filed would not entitle a claim for the price of the copier to § 503 priority. Likewise, while Jartran (as the debtor-in-possession) enjoyed the benefits of the published ads, the transaction out of which these benefits arose was completed before the petition was filed and nothing could have been done to further or cancel the transaction after the petition filing. Thus, the matter was outside the scope of § 503.

732 F.2d at 588–89. The first example in the quotation is said to be this case, so appellant argues that debtor's failure to reject the goods gives its claim administrative priority status. However, this court does not regard the mere inclusion of that example as sufficient to show the Seventh Circuit would adopt that rule. The court distinguishes the example without deciding whether it is correct, and later in the opinion makes clear it was not deciding how to handle that hypothetical example. 732 F.2d at 591.

The debtor's accepting the goods obviously does not induce the shipper to do anything, at least in a situation like this where KKU had already fully performed. Since the debtor's acceptance of the goods did not induce performance by KKU, and such inducement by the debtor is regarded as "crucial," *id.* at 587, to granting administrative priority, KKU is not entitled to an administrative priority for its claim.

IT IS THEREFORE ORDERED that the bankruptcy judge's decision denying administrative priority status to appellant's claim is affirmed.

alternative reason does not apply.