In re D.M. KAYE & SONS
TRANSPORT, INC.,
Debtor.

Civ.A. No. 00–04867–W.

United States Bankruptcy Court,
D. South Carolina.

Feb. 1, 2001.

Thomas Eugene Alle, III, Linda K. Barr–Efird, Michael McNulty Beal, Clinch H. Belser, Jr., Belser & Belser, PA, John B. Butler, III, Columbia, SC, George Barry Cauthen, Michael S. Church, Columbia, SC, Frank W. DeBorde, Morris, Manning & Martin LLP, Atlanta, GA, Lydia A. Eloff, Columbia, SC, Seann A. Gray, Greenville, SC, David Allen Grumbine, Greenville, SC, Lawrence Wilbur Johnson, Jr., Columbia, SC, Nancy E. Johnson, Robinson, Barton, McCarthy & Calloway, Columbia, SC, Matthew F. Kye, Oppenheimer, Wolff & Donnelly LLP, New York City, Thomas J. Lallier, Minneapolis, MN,

Cynthia J. Lowery, Moore & Van Allen PLLC, Charleston, SC, Thomas E. Lydon, III, Columbia, SC, Annemarie B. Mathews, Columbia, SC, John J. McKay, Jr., Hilton Head Island, SC, Julio E. Mendoza, Jr., Nexson, Pruet, Jacobs & Pollard, Columbia, SC, R. William Metzger, Jr., Columbia, SC, Michael J. Polk, Columbia, SC, Beth E. Rogers, Morris, Manning & Martin LLP, Atlanta, GA, Robert G. Sanker, Keating Muething & Klekamp PLL, William Harold Short, Jr., Columbia, SC, Charles Pelot Summerall, IV, Charleston, SC, John E. Swain, Frankfort, KY, Ronald James Tyron, Parker, Poe, Adams & Bernstein LLP, Dalton H. Watkins, Columbia, SC, Rory D. Whelehan, Winston-Salem, NC, Andrew J. White, Jr., Greenville, SC, for creditors.

G. William McCarthy, Jr., Columbia, SC, for debtor.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Motion for Allowance and Payment of Administrative Claim (the "Motion") filed by Western Star Finance Inc. ("Western Star") on November 6, 2000. In the Motion, Western Star requests that it be entitled to allowance and payment of $129,686.40 as an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A)[1] for the first fifty-nine (59) days of post-petition rent on the lease of tractors, and further requests timely payments pursuant to § 365(d)(10) for the rent starting on the sixtieth day from the petition date until the rejection of the respective leases.[2] On November 21, 2000, Navistar Financial Corporation ("Navistar") filed an Objection to Western Star's Motion claiming, among other things, that Navistar and other creditors are similarly situated as Western Star; therefore, no administrative claim payments should be made until all such claims have been filed and payment is authorized on a pro-rata basis. Debtor also filed an Objection to Motion for Allowance and Payment of Administrative Claim on November 22, 2000. Debtor objected on the grounds that the policy goals of § 503(b)(1)(A) of the Bankruptcy Code to encourage creditors to do business with a debtor post-petition have not been satisfied in the present case and that, even assuming that Western Star is entitled to a limited administrative claim, the amount requested exceeds the reasonable value of the use of the tractors. After considering the pleadings in the matter and the arguments of the parties and evidence presented at the hearing on the Motion, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R.Civ.P. 52, made applicable in bankruptcy proceedings by Fed.R.Bankr.P. 7052.[3]

## FINDINGS OF FACT

1. D.M. Kaye and Sons Transport, Inc. ("Debtor")[4] is a flatbed and dry van carrier that operates a fleet of tractors and trailers throughout the United States.

2. On June 2, 2000, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3. Western Star is a corporation engaged in the equipment leasing business. During the period from March 3, 1999 through and including October 19, 1999, Debtor entered into ten (10) Vehicle Lease Agree-

---

1. Further references to the Bankruptcy Code shall be by section number only.

2. At the hearing on the Motion, counsel for Western Star presented the following amended figures as the amounts requested pursuant to both § 503(b)(1)(A) and § 365(d)(10): $182,309.12 for the administrative claim pursuant to § 503(b)(1)(A) and $27,793.25 for the claim pursuant to § 365(d)(10).

3. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

4. For instances which occurred post-petition, the term "Debtor" shall refer to the debtor-in-possession.

ments ("Leases") and TRAC Rider Agreements with Western Star, as lessor, pursuant to which Debtor leased fifty-nine (59) Western Star 4964EX tractors (the "Leased Vehicles"), in exchange for monthly rental payments in the approximate amount of $95,009.43. On or about April 18, 2000, Western Star and Debtor entered into Modified Agreements to alter the schedule of monthly rental payments due under the Leases.

4. Debtor retained possession of the leased vehicles after the filing of the petition and continued to use Western Star's tractors in the ordinary course of business. Debtor is due for monthly tents since and including April 15, 2000.

5. On June 20, 2000, Western Star and The CIT Group/Equipment Financing Inc.[5] filed an Emergency Motion for Relief from Automatic Stay or, Alternatively for Adequate Protection claiming that Debtor continued possession and use of Western Star and The CIT Group's vehicles and that the creditors lacked adequate protection of their financial interests in the leased property, including a lack of adequate insurance coverage. An Interim Order was entered in conjunction with the Motions for Relief from Stay filed by two other creditors[6] and the Western Star and The CIT Group's motion was continued at the parties' request until July 20, 2000.

6. On July 3, 2000, Western Star filed a second Motion for Relief From Automatic Stay or, Alternatively for Adequate Protection and also filed a Motion to Compel Assumption or Rejection of Lease, for Payment of Rent and/or for Adequate Protection. At the hearing on those motions held on July 20, 2000, counsel for Debtor and Western Star announced a settlement of all pending motions and thereafter noticed said agreement pursuant to Fed. R.Bankr.P. 4001.

7. The Stipulation and Agreement Modifying the Automatic Stay (the "Stipulation and Agreement") which was filed on July 27, 2000 and which was noticed pursuant to Fed.R.Bankr.P. 4001(d), indicated that the Debtor had defaulted under the leases prepetition at which time Western Star terminated the Leases in accordance with their terms.[7] It also provided for the turnover of the tractors to Western Star on the following terms and conditions:

> On or before July 31, 2000, Debtor shall tender to Western Star possession of ten Leased Vehicles. On or before August 6, 2000, Debtor shall tender to Western Star possession of an additional twenty Leased Vehicles On or before August 15, 2000, Debtor shall tender to Western Star possession of twenty-eight Leased Vehicles. With respect to the Leased Vehicle presently undergoing repairs, debtor at its cost shall complete the repairs to said vehicle in accordance with the repair estimate provided by Debtor's adjuster and said Vehicle shall be tendered to Western Star on the earlier of its repair completion or whenever demanded by Western Star in the event repairs in Western Star's opinion are not being completed timely.

The Stipulation and Agreement Modifying the Automatic Stay further provided that, "Prior to tender, debtor may use the Leased Vehicles only in the ordinary course of its business and within generally accepted industry standards." The Agreement made no mention of lease payments

---

**5.** Western Star is a wholly owned subsidiary of The CIT Group.

**6.** The Interim Order entered July 7, 2000 set forth Debtor's duty to notify each lienholder and lessor within 24 hours of any incident of any damage to the collateral in the amount of $1,500 or more; specified that each lienholder and lessor had access to inspect their collateral, and further required Debtor and the Watson Group Insurance Agency to notify the lienholders and lessors of any issued cancellation of the insurance policy or any warning of a pending default.

**7.** Despite the fact that the Stipulation and Agreement indicates that the Leases terminated prepetition, that argument was never raised by either party in conjunction with the Motion presently before the Court.

or other adequate protection payments, rather, it chiefly provided for the dates of the return of the leased tractors and reserved all parties' rights in regards to the issue of an administrative expense claim or other claim by Western Star.

8. By Order entered August 22, 2000, the Court approved the Stipulation and Agreement Modifying the Automatic Stay.[8] While the Order did not make any mention as to the rejection of the subject Leases and despite the fact that the Court never expressly approved said rejection, at the hearing on the Motion the parties agreed and acknowledged that there had been a *de facto* rejection of the Leases on the various respective dates of the return of the tractors.

## CONCLUSIONS OF LAW

In the Motion, Western Star claims that it is entitled to administrative expense status pursuant to § 503(b)(1)(A) for rent payments under the Leases for the first fifty-nine (59) days following the filing of the petition and to timely rent payments pursuant to § 365(d)(10) for the period starting on the sixtieth day following the filing of the petition and continuing until the rejection of the Leases.

### 1. Relationship Between §§ 365 and 503

■ To resolve the issue, the Court must first examine the relationship between § 365 and § 503. Once the petition for relief under the Bankruptcy Code has been filed, § 365 gives the trustee or the debtor-in-possession the authority, "subject to the court's approval, [to] reject any executory contract or unexpired lease of the debtor" § 365(a). If, after acknowledging that the assumption of the lease or

executory contract is in the best interest of the debtor's reorganization, the lease is assumed, "the debtor is entitled to receive the benefits under the lease but, at the same time, is responsible for performing its obligations thereunder." *Interface Group–Nevada, Inc. v. Trans World Airlines, Inc. (In re Trans World Airlines),* 145 F.3d 124, 136 (3d Cir.1998); *see also* § 365(b)(1). In the case the lease is breached after it has been assumed, "all future payments due under the remainder of the lease become administrative expenses with administrative priority." *Id., see also Marriott Family Rest., Inc. v. Lunan Family Rest. (In re Lunan Family Rest.),* 194 B.R. 429, 450 (Bankr.N.D.Ill. 1996) ("Where a contract is assumed by a debtor-in-possession, damages which arise from a post-petition breach of that contract are 'actual, necessary costs and expenses of preserving the estate.'"). On the other hand, if the lease or executory contract is rejected, "absent facts that establish an administrative claim, damages from that breach are merely treated as a general, unsecured, pre-petition claim." *In re Lunan Family Rest.,* 194 B.R. at 450; *In re Trans World Airlines,* 145 F.3d at 136, *General American Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.),* 1 F.3d 1130, 1132 (10th Cir.1993) ("[T]here is no obligation for the trustee to pay post-petition rent when the leases are rejected, except unpaid-post-petition rent is given unsecured claim status, unless the post-petition rent claim is subject to favored administrative expenses status.")

■ Furthermore, § 365(d)(10) provides, in pertinent part,

The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first

---

**8.** The Order also provided that if Debtor defaulted in its obligations under the Stipulation and Agreement, Western Star could file an affidavit of noncompliance with the Court and that upon such filing and service and, upon the entry of a further order of the Court reflecting Debtor's default, the automatic stay under § 362 would be lifted and modified to

allow Western Star to pursue its rights and remedies in and to the leased vehicles as provided in the Leases and under applicable law. However, the Court did not approve the provision in the Stipulation and Agreement providing that the Agreement would bind any subsequent trustee of the debtor if the case were converted to a Chapter 7.

arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property, until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof.

Section 365(d)(10) provides for a "presumptive entitlement" to rent due 60 days after the filing of the petition without first meeting the requirements of § 503(b)(1)(A). *See, e.g. In re Magnolia Gas Co.,* 255 B.R. 900, 917 (Bankr. W.D.Okla.2000); *In re Russell Cave Co., Inc.,* 247 B.R. 656, 659 (Bankr.E.D.Ky. 2000); *In re Pan American Airways Corp.,* 245 B.R. 897 (Bankr.S.D.Fla.2000) Thus, while a creditor may be entitled to an administrative claim for rents due during the first 59 days of the case if the requirements of § 503(b)(1)(A) are satisfied, after the expiration of the 59–day period, the trustee is required to timely perform under the lease until assumption or rejection, whether or not the lease is beneficial to the bankruptcy estate. *See, e.g. In re Magnolia Gas Co.,* 255 B.R. at 917.

## 2. Administrative Claim under § 503(b)(1)(A)

██ Western Star claims that it is entitled to administrative expense status pursuant to § 503(b)(1)(A) for the rent on the tractors leased to Debtor during the first 59 days of the case.[9]

██ Section 503(b)(1)(A) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—(1)(A) the actual, necessary costs and expenses of

preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." Due to the general presumption in bankruptcy matters that "a debtor's limited resources will be equally distributed among creditors," courts have interpreted § 503 narrowly. *Merry–Go–Round Enter. v. Simon DeBartolo Group (In re Merry–Go–Round Enter.),* 180 F.3d 149 (4th Cir. 1999), *see also In re Southern Soya Corp.,* 251 B.R. 302 (Bankr.D.S.C.2000). The principal purpose of § 503(b)(1)(A) is to give creditors the incentive to continue dealing with the debtor-in-possession and supply it goods and services. *See, e.g. In re Southern Soya,* 251 B.R. at 302 (citing *In re Merry–Go–Round Enter.,* 180 F.3d at 158), *see also General American Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.),* 1 F.3d 1130 (10th Cir.1993) (citations omitted) ("§ 503(b)(1)(A) was not intended to 'saddle debtors with special post-petition obligations lightly or give preferential treatment to certain select creditors by creating a broad category of administrative expense.' The policy behind giving priority to administrative expenses in Chapter 11 proceedings is 'to encourage creditors to supply necessary resources to debtors post-petition.' ")

██ In order for a claim to be granted administrative expense status, the party claiming entitlement to such status has the burden of proof. *In re Mid Region Petroleum, Inc.,* 1 F.3d at 1132, *see also In re Merry–Go–Round Enter.,* 180 F.3d at 149. Thus, for a claim to rise to the level of administrative claim, Western Star has the burden to show that two factors have been met: (1) that the claim arose out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession;

9. The Motion initially requested the allowance of administrative expenses pursuant to § 503(b)(1)(A) in the amount of $129,686.40. At the hearing on the Motion, counsel for Western Star stated that, after further calculations, the amount requested was $182,309.12.

However, at the conclusion of the hearing, the parties agreed that, if the Court were to grant administrative expense status for rents due for the entire first 59 days of the case, the administrative claim would be $176,588.02.

and (2) that the claim directly and substantially benefited the estate. *See, e.g. In re Merry–Go–Round Enter.*, 180 F.3d at 157; *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir.1995). *In re Mid Region Petroleum, Inc.*, 1 F.3d at 1132; *In re Jartran*, 732 F.2d 584, 587 (7th Cir.1984); *In re Southern Soya Corp.*, 251 B.R. at 302, *Marriott Family Rest., Inc. v. Lunan Family Rest. (In re Lunan Family Rest.)*, 194 B.R. 429, 449 (Bankr.N.D.Ill.1996); *In re Air South Airlines, Inc.*, C/A No. 97–07229–W (Bankr.D.S.C. 12/19/2000).[10]

■ The first requirement is that the claim arise from a transaction with the debtor-in-possession or the trustee. In satisfying the first prong, courts have stated that such requirement is met in situations where there has been a post-petition inducement of a party's performance by a debtor-in-possession or trustee. *See, e.g. In re Lunan Family Rest.*, 194 B.R. 429 (N.D.Ill.1996). In *In re Lunan Family Rest.*, for example, the court concluded that a debt may be promoted to administrative expense status if the creditor provides consideration to the debtor-in possession. *Id.* at 449. The court went on to explain,

> Consideration is furnished to the estate only where the debtor-in-possession induces post-petition performance or where performance on a contract not rejected by the debtor-in-possession is rendered to the estate.
>
> Thus, the key to the allowance of an administrative expense under this analysis is an inducement to a third

party by a debtor-in-possession, followed by consideration from the third party to the debtor-in-possession. If the commitments of the parties arose prepetition, there is no administrative expense payable from the bankruptcy estate.

*In re Cardinal Indus., Inc.*, 142 B.R. 801, 803–04 (Bankr.S.D.Ohio 1992).

*Id.* at 449 (citation omitted); *see also In re Jartran*, 732 F.2d 584 (7th Cir.1984).

It is clear that where a sale of property is in question, as opposed to a lease for use of said property, and such sale has occurred pre-petition, the defaulted payments may not constitute an administrative expense claim. *See, e.g. Microsoft Corp. v. DAK Ind., Inc. (In re DAK Ind., Inc.)*, 66 F.3d 1091 (9th Cir.1995) (holding that a computer software vendor, which had entered into a pre-petition agreement allowing debtor to install software on computers that debtor sold, was not entitled to administrative expense status for royalty payments based on debtor's distribution of software post-petition; rather, the court characterized the parties' agreement as a lump-sum sale of software units and concluded that the debt had arisen pre-petition), *In re Marcus*, 64 B.R. 207 (N.D.Ill. 1986) (finding that a transaction involving the sale of tools and parts to debtor was finalized pre-petition and thus concluding that the creditor was not entitled to administrative claim status).

■ The cases are clear in concluding that a secured creditor does not gain administrative expense status by "merely

---

10. The Court has found some cases in which the courts allowed the elevation of post-petition rents on pre-petition leases to administrative expense status by concluding that the estate was actually benefitted by the use of the leased equipment. *See, e.g. In re Raymond Cossette Trucking, Inc.*, 231 B.R. 80 (Bankr. D.N.D.1999); *In re Bridgeport Plumbing Prods.*, 178 B.R. 563 (Bankr.M.D.Ga.1994). Both cases dealt with pre-petition leases and focused on the issue of whether the property in possession continued to be used by the debtor-in-possession thus providing an actual benefit to the estate. However, the cases did not analyze the requirement that the claim arose from a post-petition transaction with the debtor-in-possession. Despite the analysis adopted by the courts in those cases, this Court adopts the view upheld by the Fourth Circuit in *In re Merry–Go–Round Enter.*, 180 F.3d 149 (4th Cir.1999) that the test to determine whether a claim warrants § 503(b)(1)(A) treatment is a two-pronged analysis which first requires the existence of a post-petition transaction.

sitting back and allowing the debtor-in possession to continue using property which the pre-petition debtor owned." *In re Carpet Center Leasing Co.,* 991 F.2d 682, 687 (11th Cir.1993). However, a claim may meet the post-petition transaction requirement if the debtor-in-possession "actively bargains" for the use of the collateral and the creditor seeks and receives adequate protection of its interest. *See, e.g. id.* (finding that the requirement that there be a post-petition transaction was satisfied because "rather than simply enjoying the benefits of a pre-petition commitment, Debtor actively bargained for the use of the tractors after filing its bankruptcy petition."), *In re Raymond Cossette Trucking, Inc.,* 231 B.R. 80, 84 (Bankr.D.N.D.1999). The Court finds that the facts of this case present a similar situation in that they deal with a lease of equipment and a post-petition Stipulation and Agreement Modifying the Automatic Stay which was actively bargained for by Debtor.

In this case, within a month after the petition was filed, Western Star filed a Motion for Relief From Automatic Stay or, Alternatively for Adequate Protection and also filed a Motion to Compel Assumption or Rejection of Lease, for Payment of Rent and/or Adequate Protection. The Motions resulted in a Stipulation and Agreement, which was noticed to all creditors and parties in interest pursuant to Fed.R.Bankr.P. 4001(d). The Stipulation and Agreement set the terms upon which the leased equipment was to be returned to Western Star. More specifically, it provided for Debtor to tender 10 of the 59 leased tractors to Western Star by July 31, 2000, further turnover of an additional 20

tractors by August 6, 2000; and final tender of the remaining trucks to Western Star on or before August 15, 2000.[11] Furthermore, the Agreement and Stipulation provided, "Prior to tender, debtor may use the Leased Vehicles only in the ordinary course of its business and within generally accepted industry standards. Further, prior to tender Debtor shall keep the Leased Vehicles insured and shall repair and maintain them as provided by the Leases."

Western Star did not merely sit back and allow Debtor to continue using its tractors pursuant to the pre-petition Leases. The creditor sought to compel the setting of a deadline for the assumption or rejection of the leases and sought rent or adequate protection to offset any decline in value of its interests during the use of the equipment. Similarly, Debtor did not merely reject the Leases and hold the equipment. Rather, in response to creditor's action to compel, Debtor "actively bargained" with Western Star as indicated by the Stipulation and Agreement for a specified and continued use of the equipment until certain dates, without contemporaneous lease payments or payments for adequate protection.

■ While the effect of § 365(d)(10) provides a "breathing spell" for a debtor-in-possession to make a reasoned decision to assume or reject a lease, it does not compel that decision at any time before confirmation, nor does it require the lessor of personal property to supply its property, during the first 59 days, free and clear of any charges or protections until rejection. By its motions, Western Star requested relief from stay,[12] lease payments

---

**11.** One of the 59 tractors in Debtor's possession had been damages and required major repair. As to that tractor, the Stipulation and Agreement provided:

> With respect to the Leased Vehicle presently undergoing repairs, debtor at its cost shall complete the repairs to said vehicle in accordance with the repair estimate provided by debtor's adjuster and said Vehicle shall be tendered to Western Star on the

earlier of its repair completion or whenever demanded by Western Star in the event repairs in Western Star's opinion are not being completed timely.

**12.** In 1994, through the Bankruptcy Reform Act, § 363(e) was amended to provide as follows:

> Notwithstanding any other provision of this section, at any time, on request of any enti-

and adequate protection, and a court-ordered date for the assumption or rejection of the leases. It exchanged its rights to these remedies for Debtor's agreement to insure, maintain, repair and return the tractors by turnover on dates certain, and thereby avoided further delay, attorneys' fees, and costs associated with further court proceedings or an involuntary repossession. Similarly, Debtor negotiated for the continuing possession and use of the tractors without payment to Western Star.

After such negotiation, the parties reached an agreement; which was the announced to then Court, noticed to creditors, and approved by Order entered August 22, 2000. Under the circumstances of this particular case, it thus appears that the post-petition transaction requirement of § 503(b)(1)(A) was met. The Court further finds that the post-petition transaction required to satisfy § 503(b)(1)(A) should be recognized as having been entered into on July 20, 2000, when the parties' agreement was announced before the Court.

■ Having concluded that the first prong requiring a post-petition transaction with the debtor-in-possession or the trustee has been satisfied, the next question becomes whether the use of the trucks benefitted the estate. The language of § 503(b)(1)(A) specifies that administrative priority status is warranted for "actual, necessary costs and expenses. of preserv-

ing the estate." The Fourth Circuit has interpreted this requirement as follows:

> This ... narrow interpretation requires actual use of the creditor's property by the debtor, thereby conferring a concrete benefit on the estate before a claim is allowable as an administrative expense. Accordingly, the mere potential of benefit to the estate is insufficient for the claim to acquire status as an administrative expense. The Court's administrative expense inquiry centers upon whether the estate has received an actual benefit, as opposed to the loss a creditor might experience by virtue of the debtor's possession of its property.

*Ford Motor Credit Co. v. Dobbins,* 35 F.3d 860, 866 (4th Cir.1994); *see also In re Southern Soya,* 251 B.R. 302 (Bankr. D.S.C.2000). In this case, there is no dispute between the parties as to the fact that the tractors in question were used by Debtor post-petition and provided an actual benefit to the estate by allowing Debtor to continue its business operations; therefore, the Court finds that the second prong of the analysis to determine whether a claim warrants administrative claim status is also met.

Despite the narrow application of § 503(b)(1)(A) contemplated by the Fourth Circuit in *Merry–Go–Round Enter. v. Simon DeBartolo Group (In re Merry–Go–Round Enter.),* 180 F.3d 149 (4th Cir. 1999), the Court finds that this holding concurs with the policy reasons behind

ty that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as in necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).
Section 363(e) was thus amended to clarify a lessor's right to adequate protection of its interest in property but to specify that such lessor may not obtain relief from the stay pursuant to § 362(d). *See 3 Collier on Bank-*

*ruptcy,* ¶ 363.05[4] (15th ed. rev.2000) (footnotes omitted) ("The amendment suggests that such a lessor may obtain protection of its interest in the property leased to the debtor, such as protection of the value of the property or enforcement of the debtor's obligation to make rental payments under section 365(d)(1), but may not obtain relief from the stay to retake the property based on a lack of adequate protection"). In this case, the Court also notes that while relief from the automatic stay is generally not granted to lessors for lack of adequate protection, relief may be an appropriate remedy if the leases were terminated pre-petition, as indicated by the Stipulation and Agreement.

that section. As stated by this Court in *In re Southern Soya*, 251 B.R. 302 (Bankr. D.S.C.2000), "[t]he main purpose behind granting administrative expense status to certain expenses of a debtor is to induce creditors and landlords to continue doing business with the debtor or to enter into new loans or contracts." *Id.* This policy is furthered by situations such as in this case where Debtor induced Western Star to forego certain rights and actively bargained for and continued to use the tractors which provided an actual and direct benefit to the estate.[13]

 Therefore, the Court concludes that, as for the claim for the rent due for the first 59–days following the filing of the petition, such claim warrants administrative expense status. In its Objection, Debtor pointed out that the rate requested by Western Star did not represent the reasonable value of Debtor's use of the tractors because, prior to their surrender, the vehicles sat idle during the decommissioning process. The Court finds that Western Star should be granted an administrative claim pursuant to § 503(b)(1)(A) for the post-petition rental payments from July 20, 2000, the date of the hearing at which the existence of an agreement was announced, to July 31, 2000, taking into account the fact that certain trucks may have been decommissioned prior to that date.[14] Furthermore, the Court finds that the lease rental rate is the proper rate for the administrative claim in this particular case. However, since the Court was not presented with the dates on which the various tractors were decommissioned, the Court must schedule a further hearing to determine the exact amount of Western Star's § 503(b) administrative claim. **The hearing is scheduled for February 8, 2001 at 10:30 a.m. before the undersigned Judge at the Donald Stuart Russell Federal Court House, 201 Magnolia Street, Spartanburg, South Carolina.**

### 3. Claim under § 365(d)(10)

 Western Star also requests payment for the rent due starting on the sixtieth day after the petition date until the rejection of the respective Leases. The original claim for rents due pursuant to § 365(d)(10) was in the amount of $27,293.25; however, after taking into account that the tractors were decommissioned for an average of seven days prior to being returned, at the hearing on the Motion the parties submitted a written stipulation that the § 365(d)(10) claim, would be reduced to $12,052.40.[15] As dis-

13. In the case of *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860 (4th Cir.1994), the Fourth Circuit noted that in certain situations administrative claim status may be granted even where no new post-petition credit is extended. In a footnote, the court explained:

> It may seem odd that a § 503(b) administrative expense can be created by a debtor's postpetition use ... of collateral which the debtor had also used before going bankrupt. It seems odd because when we think of § 503(b) administrative expense claims, we think of claims "allowed for those who agree to extend postpetition credit to the bankruptcy estate as a loan or in the furnishing of goods or services." ... It may seem like somewhat of a stretch, then, to say that a creditor whose collateral is being used by the debtor against the creditor's wishes somehow is extending postpetition credit to the estate. But, as we said in Grundy, "what constitute actual and necessary costs and expenses of preserving the estate might well be opened to judicial construction." ... It is this flexible judicial construction of § 503(b) which allows us to suggest that a creditor extends postpetition credit when in reality the creditor—who is forced to allow the debtor's continued use of collateral after the debtor slides into bankruptcy—extends no credit at all. . . .

The court then went on to state that the "flexible judicial construction" could only be "stretched" to a certain point, and concluded that a mere potential benefit to the estate could not warrant the granting of an administrative expense claim. In this case, however, the Court finds that an actual and direct benefit was bestowed upon the estate.

14. Section 365(d)(10) governs the period starting on August 1, 2000, the sixtieth day after the filing of the petition.

15. As stated earlier, despite the fact that the Court never expressly authorized the rejection

cussed above, the purpose of § 365(d)(10) is to mandate the performance of the debtor's duties and obligations under an unexpired lease beginning 60 days after filing, regardless of whether the claim meets the requirements of § 503(b)(1)(A). *See, e.g.* *In re Magnolia Gas Co.,* 255 B.R. 900, 917 (Bankr.W.D.Okla.2000). Accordingly, pursuant to § 365(d)(10), the Court finds that Debtor is obligated to Western Star for the payment for a period between 60 days after the order for relief and the various dates the tractors were returned to Western Star, which represent the date the Leases were rejected.

Western Star claims that, due to the language in § 365(d)(10) indicating that the trustee shall "timely" perform the debtor's obligations, it should be paid immediately for the claim due pursuant to § 365(d)(10). However, due to the circumstances in this case, the Court is inclined to deny the immediate payment of Western Star's claim. Debtor has already filed a Disclosure Statement and Plan of Reorganization on December 21, 2000, and a hearing on the Disclosure Statement is presently scheduled for February 8, 2001. Furthermore, there are several other creditors in this case which are holding administrative expense claims; some creditors's claims, including Navistar's, are for post-petition rent payments under leases which were assumed and later breached. Considering the equities in this case, the Court finds that it is proper to have Western Star's claim pursuant to § 365(d)(10) be considered for payment along with other administrative claims similarly situated at confirmation of a Plan of Reorganization.[16] **In order to set the amount of that claim, a further hearing shall be held on Feb-** **ruary 8, 2001 at 10:30 a.m. before the undersigned Judge at the Donald Stuart Russell Federal Court House, 201 Magnolia Street, Spartanburg, South Carolina.**

### CONCLUSION

From the arguments discussed above, it is therefore

**ORDERED** that, to the extent stated above, Western Star's request that it be entitled to allowance and payment of an administrative expense pursuant to § 503(b)(1)(A) during the first 59 days after the petition is filed is granted. Due to the lack of specific evidence necessary for the Court to determine the exact amount of Western Star's administrative claim pursuant to this ruling, **a further hearing has been scheduled before the undersigned Judge on February 8, 2001 at 10:30 a.m. at the Donald Stuart Russell Federal Court House, 201 Magnolia Street, Spartanburg, South Carolina.**

**IT IS FURTHER ORDERED** that, pursuant to § 365(d)(10), Debtor shall pay Western Star, according to a confirmed Plan of Reorganization, the rent due for the Leases of tractors for the period commencing 60 days after the order for relief until the rejection of the Leases. **In order to set the amount of that claim, a further hearing shall be held on February 8, 2001 at 10:30 a.m. before the undersigned Judge at the Donald Stuart Russell Federal Court House, 201 Magnolia Street, Spartanburg, South Carolina.**

**AND IT IS SO ORDERED.**

---

of the subject Leases, the parties acknowledged that there was a *de facto* rejection. Furthermore, for purposes of determining the claim pursuant to § 365(d)(10), the respective Leases should be deemed rejected on the various dates the trucks were returned to Western Star.

16. The Court is prepared to accept the stipulation of the parties as to the amount of the

§ 365(d)(10) claim, $12,052.40, submitted into evidence at the July 20, 2000 hearing. However, considering the time constraints under which the parties operated in presenting the stipulation at the prior hearing, the Court will consider further arguments at a hearing scheduled for February 8, 2001 as to the effect of the decommissioning of the tractors on the rent due under the § 365(d)(10) claim.