In re **MONTGOMERY WARD, LLC, et al., Debtors.**

**Montgomery Ward, LLC, et al., Plaintiffs,**

v.

**Wiseknit Factory, Ltd., Defendant.**

**Bankruptcy No. 00–4667(RTL).**
**Adversary No. 01–6607.**

United States Bankruptcy Court, D. Delaware.

April 17, 2003.

Robyn C. Quattrone, Skadden, Arps, Slate, Meagher & Flom, Washington D.C., Mark A. Fink, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE, Co–Counsel for Plaintiff.

Robert K. Wrede, Russ, August & Kabat, Los Angeles, CA, Duane D. Werb, Werb & Sullivan, Wilmington, DE, Co–Counsel for Defendant.

## *OPINION*

RAYMONF T. LYONS, Bankruptcy Judge.[1]

Plaintiff/debtor, Montgomery Ward, LLC ("Montgomery Ward"), brought a motion for summary judgment on its complaint alleging that Defendant, Wiseknit Factory Ltd., ("Wiseknit"), violated the automatic stay of 11 U.S.C. §§ 362(a)(1), (3), and (6) by instituting a breach of contract action in California to collect on a pre-petition obligation.[2] Montgomery Ward further alleges that Wiseknit's violation of the automatic stay was willful and seeks damages under 11 U.S.C. § 362(h), as well as other relief. The relief sought by Montgomery Ward in its complaint is for judgment:

a. Declaring that the Defendant has violated sections 362(a)(1), 362(a)(3), and 362(a)(6) of the Bankruptcy Code;

b. Declaring that the Defendant's violations of the Automatic Stay were willful and knowing violations under section 362(h) of the Bankruptcy Code;

c. Declaring that the Suit is void *ab initio*;

d. Preliminarily and permanently enjoining defendant from pursuing the Suit and instead enjoining Defendant to dismiss the Suit;

e. Awarding Plaintiff actual and punitive damages, and such interest as may be permitted by law, as a result of the Defendant's knowing and willful violation of the Automatic Stay;

f. Awarding Plaintiff reasonable and necessary attorneys' fees to the extent permitted by law;

g. Awarding Plaintiff its costs and expenses incurred in connection with this action;

h. Awarding Plaintiff sanctions against Defendant for its willful and knowing violation of the Automatic Stay;

i. Granting Plaintiff such other and further relief as the Court deems just and proper.[3]

Wiseknit brought a cross-motion for summary judgment, alleging that its claim against Montgomery Ward arose post-petition, and thus its lawsuit was not subject to the stay. Because Wiseknit's right to payment arose before the debtor filed for bankruptcy, the debt is a pre-petition claim subject to the automatic stay. Summary judgment is granted in favor of Montgomery Ward.

---

1. Honorable Raymond T. Lyons, U.S. Bankruptcy Judge, District of New Jersey; by assignment to the U.S. Bankruptcy Court, District of Delaware.

2. Wiseknit's complaint alleged four separate counts, the first of which was breach of contract. Whether the three remaining counts for conversion, fraud and tortious interference with contract violated the automatic stay was not fully briefed by the parties and so is not addressed by this court. The court has requested supplemental briefs on these counts.

3. Complaint at 14–15.

This court has jurisdiction under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1), and the Order of Reference from the United States District Court for the District of Delaware. Additionally, this is a core proceeding that can be heard and determined by a bankruptcy judge under 28 U.S.C. § 157(b)(2)(G) involving the automatic stay.

***Facts:***

The facts are not disputed. Montgomery Ward owned and operated a large chain of retail department stores. Wiseknit, a Hong Kong corporation that manufactures and exports clothing, was one of its suppliers, the two having done business from 1994 to December 2000. In September 2000, Montgomery Ward issued four Import Purchase Orders (IPOs), totaling $220,548.99, for merchandise from Wiseknit. The following month, at Montgomery Ward's request, LaSalle National Bank ("LaSalle") issued three letters of credit naming Wiseknit as the beneficiary to pay for the goods. Each of the letters of credit expired on December 20, 2000. LaSalle was not required to act under the letters of credit until the end of LaSalle's seventh business day following presentment of documents and a draft.

Wiseknit duly manufactured (or acquired) and delivered the requested goods to Montgomery Ward's consolidating agent in Hong Kong, Fritz Transportation International (HK) Ltd. ("Fritz"), between December 5 and 15, 2000. Upon delivery of the goods, Montgomery Ward's agent inspected and accepted them on behalf of Montgomery Ward. On December 16 and 18, 2000, the goods were shipped from Hong Kong bound for the Port of Los Angeles. On December 15 and 19, 2000, Fritz certified that it had distributed all of the shipping documents to Liu Chong Hing Bank Ltd. (Wiseknit's advising bank), Montgomery Ward and Montgomery Ward's California customs broker, Carmichael International Service. On December 27, 2000, documents to draw on the letters of credit, including the bills of lading, a commercial invoice and a sight draft, were presented. The following day, the debtors filed for chapter 11 protection.

On January 8 and 9, 2001, LaSalle dishonored the letters of credit because (1) they had expired, and (2) discrepancies existed between the letters of credit and the tendered bills of lading, other supporting shipment documents and IPOs such as different factory names, addresses and merchandise descriptions. LaSalle returned the documents to Liu Chong Hing Bank. Despite LaSalle's refusal to pay Wiseknit, Carmichael delivered the goods to Montgomery Ward's facility in Chino, California on January 9 and 16, 2001. On January 15 and 18, 2001, Liu Chong Hing Bank notified Wiseknit that the letters of credit had been dishonored. No payments have ever been received by Wiseknit for the goods. Montgomery Ward sold the goods as part of its going-out-of-business sale.

Wiseknit filed a complaint against Montgomery Ward, Carmichael, and BT Commercial Corporation[4] in the United States District Court for the Central District of California in June 2001 alleging, *inter alia*, breach of contract. Although Montgomery Ward notified Wiseknit that prosecuting the collection action violated the automatic stay, Wiseknit maintained that the automatic stay did not apply where the breach of contract occurred post-petition. On September 18, 2001, Montgomery Ward

---

4. BT Commercial Corporation was a consignee of shipments of goods from Wiseknit to Montgomery Ward. Presumably, BT Commercial Corporation financed Montgomery Ward's inventory.

instituted an adversary proceeding before this court against Wiseknit alleging violation of the automatic stay in contravention of 11 U.S.C. § 362. The parties have now brought cross motions for summary judgment, which, they agree, turn on whether Wiseknit's claim arose pre-or post-petition.

**Discussion:**

*I. The Automatic Stay § 362(a)*

 When a debtor files for bankruptcy protection, all efforts by creditors to collect on antecedent debts are forestalled by the automatic stay. 11 U.S.C. § 362(a) (1993 & Supp.2003). The stay applies to any "judicial, administrative, or other proceeding against the debtor that was or could have been commenced before" the debtor's filing, or other effort "to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(1). Post-petition claims or proceedings are generally not subject to the stay. *Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.)*, 744 F.2d 332, 335 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985) [hereinafter *Frenville* ]. A creditor has a claim under the Bankruptcy Code if it has either (1) a right to payment or (2) an equitable remedy for breach of performance that gives rise to a right to payment, regardless of "whether or not such right . . . is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5) (1993 & Supp.2003). Congress deliberately defined "claim" with broad strokes in order to ensure that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the

bankruptcy case." H.R.Rep. No. 595, 95th Cong., 2nd Sess. 309, U.S.Code Cong. & Admin.News 1978, 5963, 6266, *quoted in Frenville*, 744 F.2d at 336.

 A party to a contract has a right to payment when it has fully performed its obligations under the contract terms. *See In re A. Marcus Co.*, 64 B.R. 207, 210 (N.D.Ill.1986). In a sale of goods contract, tender of conforming goods "entitles the seller to acceptance of the goods and to payment according to the contract." [5] U.C.C. §§ 2–507(1) and 2–301 (West 2000) ("The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract."). To effect a proper tender under the U.C.C., the seller must "put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery." U.C.C. § 2–503(1) (West 2000). The seller's invoice normally satisfies the notice requirement. 1 James J. White & Robert S. Summers, *Uniform Commercial Code*, § 3–5, at 130 (4th ed.1995). Where a seller must deliver at a particular destination (e.g., the contract states F.O.B. seller's city), tender may also require the delivery of documents, in which case the tender may be made through normal banking channels. U.C.C. §§ 2–503(3) and (5) (West 2000). Once the seller has tendered all of the necessary documents, it "has discharged its delivery obligations and becomes entitled to payment." 1 White & Summers, *supra*, § 3–5, at 134.

 Wiseknit was obliged to manufacture or obtain certain goods and deliver those goods to Montgomery Ward's freight consolidator Fritz. Thus, when Wiseknit

---

**5.** All parties agree that the Uniform Commercial Code ("U.C.C.") as adopted in Illinois is the governing law in the instant case, even though the transaction is international in scope. Illinois's citation convention merely adds the Illinois Compiled Statutes prefix to the U.C.C. cite, so U.C.C. § 2–503 is 810 Ill. Comp. Stat. 5/2–503. For brevity's sake, this opinion will refer only to the conventional U.C.C. cite.

delivered the goods to Fritz between the 5th and 15th of December 2000, it had successfully tendered the goods and had a right to payment. Montgomery Ward did not file for bankruptcy until two weeks later. Wiseknit argues that because of the use of letters of credit, the instant transaction is a documentary transaction as contemplated in sections 2–503 and 505 of the U.C.C. Even if this were so, and Wiseknit was, thus, required to deliver the bills of lading and supporting shipping documents as part of its tender, it accomplished that on December 27, 2000 when it tendered the documents through normal banking channels, still prior to the date of Montgomery Ward's petition. When Wiseknit issued its invoice and draft, it was stating that it had a right to payment. Both documents were issued pre-petition.

Wiseknit argues that its right to payment under the contract did not arise until seven days after it presented the bills of lading and supporting documents to La-Salle, in other words, a week after Montgomery Ward filed its petition. There are two components to this contention. First, Wiseknit predicates its argument on the provisions of the letters of credit issued by LaSalle, which state that LaSalle need not act on any tendered documents until the close of its seventh business day after receiving them. Second, arguing that the letters of credit "obligat[e] the seller to present documents evidencing the right to possess and dispose of the goods to the issuing bank and the bank to pay the seller the amount set in the sales contract exchange,"[6] Wiseknit assumes that the letters of credit are either a contract between it and LaSalle, or give rise to third party beneficiary rights under the contract between LaSalle and Montgomery Ward. This argument fails for three reasons.

First, these "7 business day" provisions of the letters of credit do not give the beneficiary any rights. Rather, they act as an outside limit circumscribing what is considered a reasonable amount of time for the issuing bank to examine tendered documents and determine whether to honor the letter of credit. U.C.C. § 5–108(b) (West 2000). If the bank were to put off making a decision on whether to honor the letter of credit beyond a reasonable time, then the beneficiary could pursue the remedies provided under section 5–111 of the U.C.C. for wrongful dishonor. However, U.C.C. § 5–108(b) does not address the rights of the beneficiary.

 Second, this argument misconstrues the nature of letter of credit transactions because letters of credit are not contracts. A letter of credit does not oblige the seller/beneficiary to do anything as a bilateral contract would require. If it did, then the issuing bank would have a cause of action against the beneficiary if it failed to submit the documents to draw on the letter of credit. Article 5 of the U.C.C. contemplates no such remedy. Rather, a letter of credit is a mode of payment, an "undertaking" by a lender, designed to protect a buyer and seller from certain risks often involved in international sales of goods. 3 White & Summers, *supra,* § 26–2, at 112. A letter of credit transaction typically involves three parties and two contracts in addition to the letter of credit.

> In all cases there will be a reimbursement contract between the issuer and the applicant requiring that the applicant reimburse the issuer for payments made on the letter of credit. Usually, there will also be a contract between the applicant and the beneficiary. Then there will be the issuer's obligation on the letter of credit itself. The unwashed

---

6. Wiseknit's Brief in Support of Its Motion for Summary Judgment at 20.

characterize the letter of credit as a contract between the beneficiary and the issuer, but it is better to call it an "undertaking" and so avoid the implication that contract principles might apply to it.

*Id.* at 113. In issuing a letter of credit, a lender does not make a contract with the beneficiary; it performs its contract with the applicant. *Moog World Trade Corp. v. Bancomer, S.A.,* 90 F.3d 1382, 1386 (8th Cir.1996).

Finally, this argument confuses Wiseknit's right to payment with the contract term, as incorporated from the letters of credit, for time and place for payment. As noted above, right to payment accrues when the seller tenders the goods to the buyer. U.C.C. § 2–507(1). The time and place of payment, on the other hand, is just one of the many terms upon which the parties may agree in making their contract, similar to price or quantity. 1 White & Summers, *supra,* § 3–7 at 142. In the absence of an express agreement, the U.C.C. provides that payment is to occur upon receipt of the goods, or in a documentary transfer, the documents, by the buyer. U.C.C. § 2–310 (West 2000). Here, however, the parties agreed that the medium of payment would be a letter of credit, and that time and place of payment would be according to the terms of that mechanism. Thus, they agreed to an express term directing that payment need not occur any sooner than seven days after LaSalle received the documents to draw on the letter of credit.

Wiseknit further argues that its claim arose when Montgomery Ward took physical possession of the goods at its facility in Chino, California in January 2001 without payment. According to Wiseknit, Montgomery Ward rejected the goods when LaSalle dishonored the letters of credit. In a documentary transaction, "dishonor of a draft accompanying the documents constitutes non-acceptance or rejection." U.C.C. § 2–503(5)(b). However, Montgomery Ward then took possession of the previously rejected goods when Carmichael delivered them to Chino. Montgomery Ward's possession, Wiseknit argues, gave rise to its right to payment under U.C.C. § 2–507(2). U.C.C. § 2–507(2) states "where payment is due and demanded on delivery to the buyer of goods or documents of title, his right to retain or dispose of them is conditional upon his making the payment due." U.C.C. § 2–507(2) (West 2000).

This argument misses the point. Whether Montgomery Ward took possession of the goods post-petition is irrelevant to whether Wiseknit has a pre– or post-petition claim based on its contract. A creditor has a claim where it has a right to payment, and Wiseknit's right to payment arose when it tendered the goods (or, at the latest, when it presented the draft through customary banking channels). Wiseknit's right to payment is distinct from Montgomery Ward's right to retain and dispose of the tendered goods. Taking possession may have been a subsequent bad act, but Wiseknit already had a claim under the Bankruptcy Code in December of 2000 upon tender of the goods or documents. Wiseknit cannot accrue a second claim based on the same contract or goods, nor can it transform a pre-petition claim into a post-petition claim by focusing on events that occurred after its right to payment arose. Thus, any effort to collect on the contract falls under the aegis of the automatic stay.

Relying on the analysis articulated in *Frenville,* Wiseknit also contends that it could not have brought its cause of action until Montgomery Ward breached the contract in January 2001 by taking possession of the goods without payment. *Frenville*

is clearly distinguishable on these facts. In *Frenville*, the debtor's accountants, Avellino & Beines ("A & B"), were sued by a number of banks, over a year after the debtor was forced into bankruptcy by its creditors, for negligently preparing the debtor's financial statements. *Frenville*, 744 F.2d at 333. A & B tried to bring Frenville into the suit as a third-party defendant in order to obtain contribution or indemnification. *Id.* at 334. A & B and the debtor had no indemnity contract, either pre– or post-petition. *Id.* at 336–37. The *only* right to payment was based on the common law right to indemnification or contribution, which does not arise until payment of the judgment flowing from the underlying act. *Id.* at 337. The common law right to indemnification could not come into existence until A & B was sued, at which point A & B had a contingent right to payment from Frenville. *Id.* The mature right to payment from Frenville could not arise until A & B lost and paid a judgment to the banks. *Id.* Because the banks did not sue A & B until fourteen months after Frenville's petition, the court found that A & B could bring Frenville into the state court action without violating the stay. *Id.* at 338. Significantly, however, the Third Circuit noted that if A & B had had a contractual right of indemnity, the contingent claim would have arisen at the signing of the contract, pre-petition, and been subject to the automatic stay. *Id.* at 336. In the case at the bar, Wiseknit had a right to payment under U.C.C. § 2–507(1) when it tendered delivery to Montgomery Ward. Thus, regardless of whether a breach of contract occurred in January 2001, this is not a case where accrual of a cause of action post-petition gives rise to a right to payment.[7]

In addition, the cases cited by Wiseknit in support of its breach of contract claim against Montgomery Ward do not address the liability, if any, of a buyer. Rather, they stand for the premise that where a carrier delivers goods to an entity other than the authorized holder of the bill of lading, the carrier is liable for misdelivery. *Allied Chem. Int'l, Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 481–82 (2d Cir.1985); *C–ART, Ltd. v. Hong Kong Islands Line America, S.A.*, 940 F.2d 530, 533 (9th Cir.1991). These holdings are based on the well settled legal principle that "absent a valid agreement to the contrary, the *carrier* ... is responsible for releasing the cargo only to the party who presents the original bill of lading." *Allied Chem. Int'l, Corp.*, 775 F.2d at 481 (emphasis added). Although these cases may help Wiseknit establish its claims against the carrier, they are not persuasive vis a vis Montgomery Ward.

Finally, other bankruptcy courts have faced similar facts and held that the creditor's claim was pre-petition. In *In re A. Marcus Co.*, 64 B.R. 207, the court had to determine whether a creditor's claim was a pre-petition debt or a post-petition administrative expense. *In re A. Marcus Co.*, 64 B.R. 207. The debtor in that case ordered goods from a Japanese company called KKU, delivery was F.O.B. Japan, but debtor had 90 days from delivery to pay. *Id.* at 208. Although A. Marcus had ordered the goods prior to filing for chapter 11 protection, and KKU had delivered the goods to the carrier in Japan pre-petition, the goods were not physically delivered until after the petition date. *Id.* The court found that "the only question is whether KKU made the transaction with the debtor as opposed to the pre-petition company."

---

7. The dicta in *Frenville* opining that a contingent claim arises upon signing a contract suggests that Wiseknit's claim arose pre-petition at the signing of the contract no matter when tender of the goods or documents occurred.

*Id.* at 209. The court held that the transaction was finalized and the creditor's performance complete when it delivered the goods and bill of lading to the debtor's agent in Japan. Because "KKU's performance was induced solely by pre-petition A. Marcus, not the debtor," the debt on the contract was also pre-petition.

▮▮▮▮ Montgomery Ward seeks to have the California suit declared void *ab initio.* Once a debtor files for bankruptcy protection and triggers the automatic stay, the stay suspends the authority of any non-bankruptcy court to hear a judicial proceeding against the debtor until the petition is dismissed, closed or the discharge is granted or denied. *Constitution Bank v. Tubbs,* 68 F.3d 685, 691–92 (3d Cir.1995). Absent stay relief, any such judicial proceedings are void *ab initio. Id.* at 692. Because pursuing the contract claim in the California District Court violated the automatic stay, count one of Wiseknit's complaint is void *ab initio.*

## II. Damages § 362(h)

▮▮▮ Montgomery Ward also seeks damages for Wiseknit's violation of the automatic stay. "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h) (1993 & Supp.2003). Although the statute refers to "an individual," the Third Circuit has recognized that section 362(h) applies to corporate debtors, as well. *Cuffee v. Atl. Bus. and Cmty. Dev. Corp., (In re Atl. Bus. and Cmty. Dev. Corp.),* 901 F.2d 325, 329 (3d Cir.1990).[8] As discussed above, Wiseknit's pursuit of its contract claim violated the automatic stay. The only re-

maining issue is whether that violation was willful.

▮▮▮▮ A willful violation occurs where the defendant (1) knows about the automatic stay, and (2) the defendant's actions that violate the stay are intentional. *Id.* No specific intent requirement exists. *Id.* Although *University Medical Ctr. v. Sullivan,* 973 F.2d 1065, 1087–89 (3d Cir.1992) recognized a good faith exception to this rule where (1) the law on the issue is not settled, and (2) the defendant has persuasive legal authority indicating that his or her actions do not violate the stay, Wiseknit has not argued that any exception applies here. In paragraph four of its complaint in the California District Court, Wiseknit states that Montgomery Ward filed for bankruptcy on December 28, 2000, and that the "petition is currently pending." After receiving a copy of the complaint, Montgomery Ward sent a letter to Wiseknit stating that the suit violated the automatic stay and demanding that Wiseknit dismiss it. Wiseknit declined to do so. Clearly, Wiseknit knew of the bankruptcy and brought its suit despite the automatic stay. The violation is willful, and so damages are appropriate. Counsel for Montgomery Ward will submit a certification detailing their costs and fees.

## *Conclusion:*

Wiseknit had a right to payment which arose either when it tendered the goods to Fritz in Hong Kong or, at the latest, when it tendered the documents through normal banking channels. Both of these events occurred pre-petition. Wiseknit's effort to recover on its contract claim in the first count of its complaint in California violated the automatic stay of 11 U.S.C. § 362(a)(1). Montgomery Ward's motion

---

**8.** The majority rule is that a corporation is not an individual and is not entitled to damages under section 362(h). *In re Am. Chem. Works Co.,* 235 B.R. 216 (Bankr.D.R.I.1999).

**58**

for summary judgment is granted. Count one of Wiseknit's California complaint is void *ab initio*. An injunction against pursuing the contract claim, as requested by Montgomery Ward, is unnecessary because the claim is subject to the automatic stay. Wiseknit's violation of the stay was willful. Because damages were not quantified in the moving papers, Montgomery Ward will submit a certification describing the damages sought. Wiseknit may, of course, object to the amount or allowability of the damages sought. Wiseknit's cross motion for summary judgment is denied.